63 A.3d 672

Bonita H. MARSHALL

v.

SAFEWAY, INC.

No. 2271, Sept. Term, 2011.

Court of Special Appeals of Maryland.

March 22, 2013.

**546**

Richard T. Seymour, Washington, D.C., for Appellant.

William F. Ryan, Jr., (Jerome C. Schaefer, Peter W. Sheehan, Jr., Whiteford, Taylor & Preston, LLP, on the brief), Baltimore, MD, for Appellee.

Panel: EYLER, DEBORAH S., WOODWARD, IRMA S. RAKER, (Retired, Specially Assigned), JJ.

DEBORAH S. EYLER, J.

In the Circuit Court for Prince George's County, Bonita Marshall, the appellant, sued her employer, Safeway, Inc. ("Safeway"), the appellee, alleging that, as to her and a class of similarly situated employees, Safeway had violated the Maryland Wage Payment and Collection Law, Md.Code (2008 Repl.Vol., 2010 Supp.), section 3–501 *et seq.* of the Labor and Employment Article ("LE") ("the Payment Law"), by garnishing wages in excess of the amount permitted under certain writs of garnishment. She sought damages in the amount of the over-garnishment; treble damages and attorneys' fees; prejudgment interest; a declaration that the over-garnishment was unlawful; and injunctive relief.

Safeway moved to dismiss, arguing that the Payment Law did not create a private cause of action for over-garnishment of wages and that, because the amount of Marshall's damages was less than $5,000, the District Court had exclusive, original jurisdiction over her claims. The circuit court granted Safeway's motion in part, dismissing the Payment Law claim but not the claims for declaratory and injunctive relief. Thereafter, Marshall filed an amended complaint, substituting a breach of contract claim for the Payment Law claim. The

court later dismissed the contract claim for lack of jurisdiction based on the amount of damages sought.

More than a year and two months after filing her complaint, Marshall filed a motion to certify a class. On the first day of the scheduled trial in the case, the court heard argument on that motion and on a motion to compel and for sanctions that Marshall had filed. It denied class certification and denied the motion to compel and for sanctions as moot. Trial went forward on stipulated facts on the remaining claims for declaratory and injunctive relief, and the court ruled in Safeway's favor.

Marshall noted an appeal, presenting five questions for review, which we have rephrased:

I. Did the circuit court err in dismissing Marshall's Payment Law claim?

II. Did the circuit court abuse its discretion in denying Marshall's motion for class certification?

III. Did the circuit court abuse its discretion in denying Marshall's motion to compel discovery?

IV. Did the circuit court err in granting judgment for Safeway on Marshall's claims for injunctive and declaratory relief?

V. Did the circuit court err in ruling that it lacked jurisdiction over Marshall's claims for damages?

For the reasons to follow, we answer the first four questions in the negative. In light of our resolution of those issues, we need not reach the fifth question. Accordingly, we shall affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

Between November 25, 2005, and December 17, 2010, Marshall worked for Safeway as a cashier at two of its stores in Prince George's County. On December 18, 2010, she went on a medical leave of absence apparently related to a shoulder injury. She plans to return to her job at Safeway after she is

able to have surgery on her shoulder and has recovered from it.

On February 6, 2009, in the District Court of Maryland in Prince George's County, Capital One Bank ("Capital One") obtained a judgment against Marshall for $1,290.81 ("District Court case"). The next month, Capital One filed a "Request for Garnishment on Wages," using District Court form DC/CV 65. DC/CV 65 is a double-sided document. The front side includes a case caption, a section to be completed by the judgment creditor requesting a writ of garnishment, and a section to be completed by the Clerk of the District Court issuing the writ. The reverse side of the form contains information for the garnishee.

On April 15, 2009, the Clerk of the Prince George's County District Court issued a "Writ of Garnishment on Wages" ("Writ") directed to Safeway, the garnishee. The Writ did not specify the precise amount to be garnished from Marshall's wages. It directed Safeway to "withhold the attachable wages of the Defendant/Debtor [*i.e.*, Marshall] for any work week or other pay period until the judgment, interest, other charges and costs as specified under the terms of the judgment are satisfied or until otherwise notified by [the District Court]." The Writ further provided that Marshall would be given a copy of the Writ and that she could "at any time contest the Garnishment by filing a motion [in the District Court case] asserting a defense or objection."

On the reverse side of the Writ there is a section entitled, "Instructions To Garnishee," *i.e.*, Safeway, followed by nine numbered instructions. As relevant here, the first instruction states that Md.Code (2005 Repl.Vol.), sections 15–601 through 15–607 of the Commercial Law Article ("CL"), and Rule 3–646 "govern wage attachment procedures."

CL section 15–601.1, entitled "Exemption from attachment," sets forth two different formulas for calculating the amount of a Maryland employee's wages that are exempt from attachment through garnishment or otherwise. It states in relevant part:

(b) Amounts of wages exempt; medical insurance payments.—The following are exempt from attachment:

(1) Except as provided in item (2) of this subsection, the greater of:

(i) The product of $ 145 multiplied by the number of weeks in which the wages due were earned; or

(ii) 75 percent of the disposable wages due;

(2) In Caroline, Kent, Queen Anne's, and Worcester counties, for each workweek, the greater of:

(i) 75 percent of the disposable wages due; or

(ii) 30 times the federal minimum hourly wages under the Fair Labor Standards Act in effect at the time the wages are due; and

(3) Any medical insurance payment deducted from an employee's wages by the employer.

Thus, for employees working in all but four Maryland counties, CL section 15–601.1(b)(1) exempts from garnishment the greater of: 1) weekly disposable wages of $145 or 2) 75% of disposable wages due. For employees working in Caroline, Kent, Queen Anne's, or Worcester Counties, however, CL section 15–601.1(b)(2) exempts the greater of 1) 75% of disposable wages or 2) 30 times the federal minimum wage. The latter formula comports with the federal exemption formula set forth under the Consumer Credit Protection Act, 15 U.S.C. section 1673(a).

Also on the reverse side of the Writ, below the instructions section for the garnishee, is a section entitled, "Exemptions For Garnishment." It states:

THE FOLLOWING ARE EXEMPT FROM GARNISH-MENT: (1) the greater of: (a) 75 percent of the disposable wages due; OR *(b) 30 times the federal minimum hourly wages under the Fair Labor Standards Act in effect at the time the wages are due;* AND (2) any medical insurance payment deducted from an employer's wages by the employer. Other federal and state exemptions may be available.

Disposable wages are the part of wages that remain after deduction of any amount required to be withheld by law.

(Emphasis added.) Thus, this section directs the garnishee to apply the federal exemption formula to all Maryland employees whose wages are being garnished, not just to employees in Caroline, Kent, Queen Anne's, and Worcester Counties, even though the first instruction informs the garnishee that garnishment is governed by the wage attachment procedures in CL sections 15–601 through 15–607, which includes CL section 15–601.1; and CL section 15–601.1 is not the same as the federal exemption, except for employees in Caroline, Kent, Queen Anne's, and Worcester Counties.

Safeway was served with the Writ on April 25, 2009. At that time, its Garnishment Department had in effect a policy that implemented the exemption formulas set forth in CL section 15–601.1(b) for Maryland employees. Garnishments were calculated by computer software, and the Garnishment Department had programmed into its software two different "Maryland General" rules, based on the county in which the employee was working. One rule covered all counties but Caroline, Kent, Queen Anne's, and Worcester, and one rule covered those counties.

Because Marshall was a Safeway employee in Prince George's County, Safeway's Garnishment Department used the software program that implemented the formula in CL section 15–601.1(b)(1) to calculate the portion of her wages that was exempt from garnishment. Once the processing department selected this software, the calculations automatically were made for each pay period without further intervention.

Safeway began garnishing Marshall's wages in June of 2009. At that time, the federal minimum wage was $6.55 per hour. Thus, under the federal exemption and the "Exemption from Garnishment" language of the Writ, $196.50 ($6.55 X 30) of Marshall's weekly disposable income was exempt from garnishment. Under Safeway's software program for Maryland, which was based on CL section 15–601.1(b), however, it ex-

empted from garnishment the greater of $145 or 75% of Marshall's disposable income per week, an amount less than $196.50. As a consequence, Safeway over-garnished Marshall's wages in three pay periods in June and July of 2009. (We shall detail the over-garnished amounts, *infra.*)

On July 16, 2009, Marshall's then counsel, Justin Zelikowitz, called Safeway's Garnishment Department at its Employee Service Center in Phoenix, Arizona. He spoke to Kristin Brossman, the processing analyst for that department, and advised her that Safeway was garnishing Marshall's wages in excess of the amount permitted by federal law and contrary to the express language of the Writ. Brossman responded that Safeway was relying upon the American Payroll Association's Guide to Federal and State Garnishment Laws ("APA Guide") in setting its garnishment policies and that its garnishment policy for Maryland employees was consistent with that guide.[1] Zelikowitz and Brossman corresponded by e-mail several times over the course of the next few days, but remained at an impasse.

In July of 2009, Zelikowitz contacted Capital One to advise it that Marshall's wages were being "garnished in excess of what is permitted by the federal exemption." On July 20, 2009, Capital One moved in its District Court case against Marshall to release the Writ. The Writ was released on July 28, 2009 and, as a consequence, Safeway ceased garnishing Marshall's wages.[2]

Nine months later, however, Capital One requested a new Writ in the District Court case. On June 21, 2010, the District Court issued a new Writ, which was served upon Safeway on

---

1. In fact, the APA Guide states that the federal law governing the amount of wages exempt from garnishment "preempt[s] state laws to the extent that state laws allow greater amounts to be garnished." American Payroll Association, *APA's Guide to Federal and State Garnishment Laws* at 8–1 (2009 ed.).

2. For reasons not clear from the record, on August 10, 2009, Capital One moved for issuance of a new Writ. This Writ was issued but, upon request of Capital One, was released just one week later on August 17, 2009.

July 3, 2010. Thereafter, Safeway again began garnishing Marshall's wages, consistent with its previously discussed policy.

As a result of Safeway's application of its garnishment policy based on CL section 15–601.1(b)(1), in six pay periods ending between June 13, 2009, and August 7, 2010, Safeway garnished Marshall's wages in compliance with that section, but in excess of 30 times the federal minimum wage. The total amount of the over-garnishment was $45.25:

| Pay Period Ending | Marshall's Disposable Wages | 30 Times Federal Minimum Wage | Amount Garnished by Safeway | Excess Garnishment |
|---|---|---|---|---|
| June 13, 2009 | $152.86 | $196.50 | $7.86 | $ 7.86 |
| June 20, 2009 | $148.47 | $196.50 | $ 3.47 | $ 3.47 |
| July 11, 2009 | $166.90 | $196.50 | $21.90 | $21.90 |
| July 3, 2010 | $151.98 | $217.50 | $ 6.98 | $ 6.98 |
| July 31, 2010 | $286.32 | $217.50 | $71.58 | $ 2.76 |
| August 7, 2010 | $147.28 | $217.50 | $ 2.28 | $ 2.28 |

All of the garnished wages, including the excess amounts, were paid by Safeway to Capital One, thereby reducing Capital One's judgment against Marshall.

On August 4, 2010, Marshall filed her complaint against Safeway in the circuit court "on her own behalf and on behalf of all other present, former, and future employees of Safeway ... who have been affected by Safeway's practice of over-garnishing the wages that are due to employees subject to a wage garnishment, in violation of the [Payment Law] and Maryland District Court garnishment orders." She alleged that Safeway's garnishment policy as applied to employees working at Safeway stores in Maryland outside of Caroline, Kent, Queen Anne's, and Worcester Counties exempted from garnishment an amount less than 30 times the federal minimum wage, and that that was a violation by Safeway of LE sections 3–502 and 3–503. She averred that, in three pay periods in June of 2009, and one pay period in July of 2010,

Safeway garnished her wages in excess of the amount permitted, for a total over-garnished amount of $29.64.[3]

Marshall further alleged that the putative class consisted of "at a minimum" 400 Safeway employees. She based her calculation upon a review of District Court records. She alleged that there were questions of law and fact common to the class, including whether Safeway's garnishment policy was contrary to the express language of the Writ; whether the over-garnishments were in violation of the Payment Law; whether the over-garnishments were the result of a *bona fide* dispute; whether declaratory relief was appropriate; and whether Safeway should be enjoined from continuing to enforce its Maryland garnishment policy. She alleged that the class properly could be certified under any of the three subsections of Rule 2–231(b). She asked the court to certify the class; to reimburse her and the class members all over-garnished amounts; to award treble damages; to award pre-judgment interest on the over-garnished amounts; to declare that Safeway's garnishment policy was unlawful; to enjoin Safeway from making excess garnishments; and to award attorneys' fees and expenses. She prayed a jury trial.

On September 7, 2010, Safeway moved to dismiss the complaint for lack of jurisdiction and for failure to state a claim for which relief could be granted. It asserted that because the damages Marshall then was seeking amounted only to $29.64, the circuit court lacked jurisdiction over her claim. *See* Md.Code (2006 Repl. Vol.), § 4–405 of the Courts and Judicial Proceedings Article ("CJP") (stating that the District Court has exclusive original jurisdiction over claims not exceeding $5,000). It further argued that Marshall was not entitled to a

---

3. Marshall's calculation of the over-garnished amount did not reflect the two pay periods ending in late July and early August of 2010. It also did not include the pay period ending July 11, 2009, and erroneously included the pay period ending June 27, 2009. The parties are now in agreement that Safeway over-garnished Marshall's wages in the six pay periods set forth above and that the total over-garnished amount is $45.25.

jury trial because her claim was for an amount less than $10,000. *See* Art. 23, Md. Declaration of Rights.[4]

Alternatively, Safeway asserted that Marshall's complaint failed to state a claim for which relief could be granted under the Payment Law because the violation she alleged—an unlawful deduction from her wages—is governed by LE section 3–503 and that section is not enforceable by means of a private cause of action. It argued that any cause of action Marshall might have had should have been brought under LE section 3–427, which is a provision of the Wage and Hour Law, and that that law does not provide for treble damages.[5]

Marshall filed an opposition in which she argued that, because she had sued for declaratory and injunctive relief, and not just for damages, the circuit court in fact had subject matter jurisdiction; that she was entitled to a jury trial on her claims because her request for attorneys' fees would exceed the $10,000 threshold; that she had stated a claim for which relief could be granted under the Payment Law; and that LE section 3–427 was not a vehicle for relief under the facts of this case.

On September 28, 2010, Safeway tendered to Marshall's counsel a check for $50.87, representing the total sum calculated by Safeway as having been over-garnished ($45.25), plus interest.[6] Marshall did not negotiate the check.

---

4. Article 23 of the Maryland Declaration of Rights now requires the amount in controversy to be at least $15,000 before a party is entitled to a jury trial.

5. LE section 3–427, entitled "Action against employer by or for employee," states, in relevant part, "[i]f an employer pays an employee less than the wage required under [the Wage and Hour Law], the employee may bring an action against the employer to recover the difference between the wage paid to the employee and the wage required under this subtitle." The Wage and Hour Law is the Maryland parallel to the Fair Labor Standards Act. It requires "that employers pay the applicable minimum wage to their employees and ... that they pay an overtime wage of at least 1.5 times the usual hourly wage for each hour over 40 that the employee works during one workweek." *Friolo v. Frankel*, 373 Md. 501, 513, 819 A.2d 354 (2003) (*"Friolo I"*).

6. On September 14, 2010, Safeway had tendered to Marshall's counsel a check for $35. It subsequently recalculated the amount it had over-garnished and tendered the September 28, 2010 check.

On November 1, 2010, the circuit court heard argument on Safeway's motion to dismiss. The court ruled from the bench that it would "dismiss the claim for damages" on two alternative grounds: that Marshall had failed to state a claim for which relief could be granted under the Payment Law and that it lacked subject matter jurisdiction over the damages claim because the amount in controversy was less than $5,000. The court denied the motion to dismiss as to the claims for declaratory and injunctive relief.

Following the ruling, counsel for Safeway represented to the court that, effective August 2010, Safeway had changed its garnishment policy for Maryland employees to comply with the language of the Writ in the section entitled "Exemptions For Garnishment." Thus, according to Safeway's counsel, from August 2010 forward Safeway was following an exemption from garnishment policy for all Maryland employees of the greater of 75% of disposable wages due or 30 times the applicable federal minimum hourly wage. At that point, the court directed the parties to file supplemental memoranda on the issue of declaratory and injunctive relief.

On November 15, 2010, Safeway filed a supplemental memorandum in support of its motion to dismiss. It argued that Marshall's claims for declaratory and injunctive relief should be dismissed because "the subject matter of the claimed relief is moot." Specifically, Safeway asserted that it had "conceded" that it had over-garnished Marshall's wages in six pay periods; it had tendered to Marshall a check for $45.25 plus interest; and it had "as a matter of corporate policy ... changed the process and manner of calculating exemptions for Maryland wage garnishments effective August 14, 2010" to comply with the "Exemptions For Garnishment" language of the Writ. It maintained that, because there no longer was an actual controversy about the legality of Safeway's garnishment policy as it had existed when Marshall's wages were garnished, and Safeway's garnishment policy had been changed so as to comport with the method of garnishment Marshall was contending was legally required, dismissal was required on the ground of mootness.

Safeway attached to its memorandum an affidavit by Brossman attesting to the precise manner in which Safeway had calculated the amount of disposable wages exempt from garnishment prior to August 14, 2010, and the new manner in which Safeway was making those calculations. The affidavit included as exhibits screen shots of Safeway's garnishment computer software depicting the new policy and instructions to employees in applying the new policy.

On November 24, 2010, Marshall moved for leave to amend her complaint. She attached her proposed amended complaint, which, as relevant here, eliminated her claim under the Payment Law and added a claim for breach of contract. The proposed amended complaint alleged, as the original complaint had alleged, that Marshall was suing on her own behalf and on behalf of a class. Safeway opposed the motion for leave to amend.

Marshall filed a supplemental memorandum in opposition to Safeway's motion to dismiss, arguing that Safeway could not "moot a putative class" by tendering to the class representative "an amount that w[ould] make only the proposed class representative whole." She further argued that her declaratory and injunctive relief claims had not been rendered moot by Safeway's asserted change in policy because Safeway's past practice of using a garnishment formula that did not comply with the language of the Writ was a "deliberate decision to defy the language of the garnishment orders." Thus, Marshall maintained that Safeway's policy change was "potentially [a] temporary change made only to avoid judicial scrutiny."

On December 8, 2010, the administrative judge entered a scheduling order. The case was assigned to "Civil Track: 1" and was scheduled for a pretrial conference on April 8, 2011.

By order of December 10, 2010, entered on January 24, 2011, the court granted Marshall's motion for leave to file her amended complaint. Also on December 10, 2010, the court denied "as moot" Safeway's supplemented motion to dismiss, because of the filing of the amended complaint.

On January 3, 2011, Safeway's counsel wrote to Marshall's counsel advising that because Marshall had not negotiated the September 28, 2009 check tendered in "full accord and satisfaction" of her claim, it now was tendering $52.07 in cash, representing $45.25 in over-garnished wages, plus interest.

On March 8, 2011, Safeway filed a motion to dismiss or, in the alternative, for summary judgment. The motion to dismiss was addressed to Marshall's original complaint, not the amended complaint, because it was Safeway's position that the amended complaint never had been filed.[7]

On March 23, 2011, Marshall filed a motion for immediate sanctions or, in the alternative, to compel discovery. She alleged that she had served interrogatories and requests for production upon Safeway in August of 2010, simultaneous with the filing of her complaint, and that, as of March 21, 2011, Safeway had neither responded to the discovery nor requested a protective order. The information and documents sought included the identity of persons with knowledge of Safeway's garnishment policies; the identification of members of the putative class; and "the production of computer-readable payroll records showing all garnishments within the three-year period of limitations tolled by the filing of [Marshall]'s lawsuit." Marshall asserted that this information was relevant to the class issues of numerosity, commonality, and typicality, and also could show "whether [Safeway]'s representations of its corrective actions are in fact correct."

Two days later, Safeway filed an opposition to Marshall's motion for sanctions and moved for a protective order. It argued that because Marshall had yet to file her amended complaint, and had yet to move for class certification, and because the court had dismissed the Payment Law claim, the "only matter[s] pending ... [were] the declaratory and injunctive claims" raised in the original complaint. It asserted that

---

7. As mentioned, Marshall attached a copy of her amended complaint to her motion for leave to amend. The circuit court granted the motion for leave to amend on December 10, 2010, but Marshall did not take any further action to file the amended complaint.

it had provided Marshall with informal discovery with respect to her damages claims, affording her a "detailed accounting" of its garnishment of her wages and information about Safeway's garnishment policies in the Brossman affidavit. It stated that it had provided formal discovery responses, acknowledging, however, that it had not done so until March 23, 2011 (the same day Marshall had moved for sanctions). In its interrogatory answers and responses to request for production of documents, Safeway objected to questions and requests seeking information about the identities of putative class members or garnishment of wages of putative class members on the basis that such information was irrelevant to the pending claims. Finally, to the extent that Marshall's contract claim in her amended complaint was before the court, Safeway asserted that it was subject to immediate dismissal for the same reason the Payment Law claim had been dismissed, *i.e.*, lack of jurisdiction based on the amount of damages sought.

On April 8, 2011, the parties appeared for the pretrial conference. At that time, the case was scheduled for a one-day trial to commence on November 21, 2011. A hearing on Safeway's pending motion to dismiss or for summary judgment was set in for April 22, 2011.

At the April 22, 2011 hearing, the court entertained argument not only on Safeway's motion to dismiss or for summary judgment but also on Marshall's motion to compel or for sanctions. The court ruled that Marshall's amended complaint had been filed simultaneous with her filing of the motion for leave to amend. It denied Safeway's motion to dismiss; denied Marshall's motion for sanctions as moot; and directed that Marshall's motion to compel be "referred to the appropriate judge for ruling." The judge presiding over the hearing suggested that the parties could request that the case be specially assigned to him and, thereafter, he could rule on the motion to compel. The parties so requested and, by order of May 10, 2010, the case was specially assigned.

On June 4, 2011, Marshall served Safeway with a second set of discovery requests. On July 5, 2011, Safeway moved for a

protective order. On July 15, 2011, Marshall filed an opposition to the motion for protective order and filed a motion to compel discovery.

On October 31, 2011, less than a month prior to the scheduled trial, Marshall filed a motion to certify a class, which Safeway opposed. We shall discuss the class allegations in detail, *infra.*

On November 21, 2011, the parties appeared for the scheduled trial, and filed agreed stipulations of fact. At the outset, the court heard argument on Marshall's motion for class certification and her motion to compel.

The court denied the motion for class certification for several reasons. First, it opined that the motion was "filed late" as it was not filed until three weeks before trial was to commence. The court next ruled that class certification was not appropriate in any event because Safeway's tender of "the funds that you all by your stipulation have agreed were wrongfully withheld from Ms. Marshall's pay" had made "her whole financially." Under the authority of *Frazier v. Castle Ford, Ltd.,* 200 Md.App. 285, 27 A.3d 583 (2011), the court ruled that the tender had mooted Marshall's claim for contract damages and, accordingly, the motion for class certification had to be denied.[8] Alternatively, the court ruled that class certification was not appropriate because the commonality prong of Rule 2–231(a) was not satisfied and the predominance and superiority prongs of Rule 2–231(b)(3) were not met. Finally, the court noted that it also had concerns about the typicality of Marshall's claims relative to the claims of the putative class. It explained that Marshall's wages were over-garnished for one year, but were not currently subject to over-garnishment because she was on a medical leave of absence from her job. The court questioned whether, given that state of events, Marshall was "the most appropriate class representative."

---

8. As we shall discuss, during the pendency of this appeal, the Court of Appeals reversed this Court's decision in *Frazier. Frazier v. Castle Ford,* 430 Md. 144, 59 A.3d 1016 (2013).

The court turned to Marshall's motion to compel. It denied the motion as moot on the ground that the outstanding discovery responses all related to the putative class.

The court stated that it was dismissing the contract claim in the amended complaint for lack of jurisdiction, based on the amount of damages sought.

Finally, the court addressed Marshall's claims for declaratory and injunctive relief. The parties agreed to proceed based upon their agreed stipulations of fact and the exhibits referenced therein and based upon two additional agreed stipulations: that, if called testify, Marshall would state that she intended to return to her job at Safeway, and that, if called to testify, Brossman would state that "everything was changed" with respect to Safeway's garnishment policy.

The court ruled in favor of Safeway on the claims for declaratory and injunctive relief, stating:

> For the reasons that I told you, I think that *Frazier* does say—is controlling expressly in regard to the claim for injunctive relief in this case where Safeway has extended or tendered to Ms. Marshall the full financial loss that she's claimed and she is not at this time working. There's no injunctive relief that the Court possibly could have fashioned for her individual claims and it's appropriate to grant judgment for the defendant on that.
>
> And in the same vein I find that it's appropriate to grant judgment for the defendant with regard to the request for declaratory relief. There is no actual controversy between Ms. Marshall and Safeway. There are no antagonistic claims which are imminent or which indicate that litigation is imminent and inevitable. The litigation is here, but the fact is that Safeway agrees that she's entitled to her $45.25. And her asserted right that she's entitled to that they've agreed to, so it's not appropriate and the Court's going to decline to issue a declaratory judgment to that effect. That resolves all the issues then.

*     *     *

So judgement [sic] for the defendant against the plaintiff as to all claims—case closed. All right?

On December 2, 2011, the court entered judgment in favor Safeway. This timely appeal followed.

## DISCUSSION

### I.

#### *Payment Law Claim*

■ Before addressing the parties' contentions, we shall set forth the pertinent provisions of the Payment Law. Codified at Title 3, Subtitle 5 of the Labor and Employment Article, the Payment Law concerns "the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment." *Friolo I*, 373 Md. at 513, 819 A.2d 354. Section 3–501 defines the term "wage" to mean "all compensation that is due to an employee for employment," including bonuses, commissions, fringe benefits, overtime wages, and "any other remuneration promised for service."

Section 3–502 is entitled "Payment of wage." Subsection (a) requires employers to "set regular pay periods; and, [with the exception of administrative, executive, and professional employees,] pay each employee at least once in every 2 weeks or twice in each month." Subsection (b) provides that if a scheduled payday falls on a non-workday the employer must pay the employee on the preceding workday. Subsection (c) governs the "[f]orm of payment," providing that "[e]ach employer shall pay a wage: (1) in United States currency; or (2) by a check that, on demand, is convertible at face value into United States currency." Subsection (d) prohibits an employer from printing an employee's social security number on his or her paycheck or any attachment thereto. Subsection (e) clarifies that the section does not prohibit direct deposit or other direct means of payment. Finally, under subsection (f), an "agreement to work for less than the wage required under this subtitle is void."

Section 3–503, governing "Deductions," states:

An employer may not make a deduction from the wage of an employee unless the deduction is:

(1) ordered by a court of competent jurisdiction;

(2) authorized expressly in writing by the employee;

(3) allowed by the Commissioner because the employee has received full consideration for the deduction; or

(4) otherwise made in accordance with any law or any rule or regulation issued by a governmental unit.

Section 3–505 concerns payment upon the termination of employment. Subsection (a) provides that "each employer shall pay an employee or the authorized representative of an employee all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Subsection (b) states that an employer need not pay an employee for accrued leave at termination to the extent that the employer has a written policy limiting the right to this form of compensation and the employee was on notice of the written policy upon being hired.

Violations of the Payment Law may be prosecuted by the Commissioner of Labor and Industry ("the Commissioner") on behalf of an employee or may in some instances give rise to a private cause of action by an employee. *See* LE §§ 3–507; 3–507.1; 3–507.2. Subsection 3–507(a) grants the Commissioner the authority to bring an action on behalf of an employee for a "violat[ion]" of "this subtitle" or to attempt to resolve the matter informally by mediation. Subsection 3–507(b) states that if the Commissioner brings an action on behalf of the employee and a court "finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute," the court may award treble damages and attorneys' fees. The Commissioner is further authorized, following an investigation of a complaint, to dismiss the complaint or to issue to an employer an "order to pay wages" for a violation of the subtitle when the amount of the unpaid wages does not exceed $3,000. LE § 3–507.1.

Private causes of action for violations of the Payment Law exist solely by virtue of section 3–507.2. That section allows an employee to bring suit against his or her employer to "recover [ ] unpaid wages" "if [the] employer fails to pay [the] employee **in accordance with § 3–502 or § 3–505 of this subtitle,** after 2 weeks have elapsed from the date on which the employer is required to have paid the wages." LE § 3–507.2(a). (Emphasis added.) In such an action, the court may award treble damages and reasonable attorneys' fees upon a finding "that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute." LE § 3–507.2(b).

■ In her original complaint, Marshall alleged that Safeway's "excess garnishments" were not "lawful deductions" as permitted by section 3–503 because they were not authorized by the Writ and indeed were expressly prohibited by the Writ. She further alleged that, by violating section 3–503, Safeway also violated section 3–502 because it failed to "timely pay [her] all of the wages that [she was] due," thus giving rise to a private cause of action under section 3–507.2(a). Finally, she alleged that Safeway's over-garnishment was not the result of "a bona fide dispute." On this basis she sought treble damages and attorneys' fees under section 3–507.2(b).

As discussed previously, Safeway moved to dismiss this claim, arguing, *inter alia,* that the Payment Law only permits an employee to bring a private cause of action against an employer for violations of sections 3–502 or 3–505, and Marshall's complaint alleged only a violation of section 3–503. The circuit court agreed with Safeway, ruling that, had the legislature intended to create a private cause of action for a violation of section 3–503, it would not have written section 3–507.2(a) so as to specifically allow a private cause of action when an employer failed to pay wages "in accordance with § 3–502 or § 3–505." Rather, it would have included section 3–503 or would have used the same language as that in section 3–507(a), which allows the Commission to bring an action for any violation of "this subtitle." The court rejected Marshall's

argument that over-garnishment of wages is the equivalent of failing to timely pay all wages due under section 3–502.

Marshall contends the circuit court erred in dismissing her Payment Law claim for failure to state a claim based on its conclusion that an "unlawful deduction" from an employee's wages under section 3–503 is not actionable by private suit. She argues that, under the circuit court's interpretation of the law, an employer could timely pay an employee a "token amount" of wages, unlawfully withhold the remainder of the wage, and be "immune" from a private cause of action and attendant treble damages and attorneys' fees. She maintains that the Payment Law must be read as "an organic whole" and that any fair reading would allow an employee to bring a private cause of action under section 3–507.2(a) whenever the employer fails to timely pay an employee all wages due, including by over-garnishment.

Safeway responds that the plain language of the Payment Law does not authorize Marshall's cause of action and that this Court should reject her "public policy argument" to enlarge the statute beyond its clear wording. It further maintains that, even if we were to conclude that section 3–502 of the Payment Law was implicated here, Marshall's complaint still failed to state a claim. Section 3–502 prohibits an employer from "paying an amount less tha[n] the wage the employee earned," but here it was undisputed that Safeway in fact paid Marshall's entire wage. It simply paid a portion of the wage to Marshall and a portion of the wage to her judgment creditor, Capital One. Alternatively, Safeway asserts that Marshall should have sued pursuant to section 3–427 of the Wage and Hour Law.[9]

---

9. This provision, quoted above, permits an employee to sue his or her employer "to recover the difference between the wage paid to the employee and the wage required" under the Wage and Hour Law, *i.e.*, for failure to pay an employee the minimum wage or to pay overtime. Marshall's claims did not allege violations of the Wage and Hour Law and thus were not cognizable under LE section 3–427.

The principles governing our interpretation of a statute are well-established:

> In statutory interpretation, our primary goal is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional, or part of the Rules. We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory. If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions, and our analysis ends. If, however, the language is subject to more than one interpretation, or when the language is not clear when it is part of a larger statutory scheme, it is ambiguous, and we endeavor to resolve that ambiguity by looking to the statute's legislative history, case law, and statutory purpose, as well as the structure of the statute.

*People's Ins. Counsel Div. v. Allstate Ins. Co.,* 408 Md. 336, 351–52, 969 A.2d 971 (2009) (internal quotation marks and citations omitted).

In *Friolo I,* the Court of Appeals examined the history of the Payment Law. It explained that the Payment Law was enacted in 1966 and allowed "the Commissioner [ ] to file suit on behalf of employees to collect wages that were unlawfully withheld." *Id.* at 515, 819 A.2d 354. In 1993, in response to "the crippling of the Commissioner's ability to enforce" the law because of budget cuts, the legislature enacted the subsection authorizing employees to bring private causes of action. (Present LE § 3–507.2.) 373 Md. at 516, 819 A.2d 354. After significant debate, the legislature decided to permit an employee to recover treble damages and attorneys' fees for "willful" violations of the law. *Id.* at 518, 819 A.2d 354.

A comparison of section 3–507, governing enforcement of the Payment Law by the Commissioner, and section 3–507.2, governing private causes of action for employees, reveals that, while the legislature used identical language with respect to an

award for a violation of the subtitle,[10] it departed from the broad language of section 3–507 in defining the scope of a private cause of action. Under 3–507(a), the Commissioner is empowered to "bring an action on behalf of an employee in the county where the violation allegedly occurred" whenever he or she "determines that *this subtitle* **has been violated.**" LE § 3–507(a) (emphasis added). The corresponding subsection at 3–507.2(a), however, authorizes an employee to file suit under the Payment Law "if an employer **fails to pay an employee in accordance with § 3–502 or § 3–505 of this subtitle.**" (Emphasis added.)

Any reading of the Payment Law must give meaning to the phrase "fails to pay an employee in accordance with § 3–502 or § 3–505" lest this language be "rendered surplusage, super- fluous, meaningless or nugatory." *Allstate*, 408 Md. at 351, 969 A.2d 971. Section 3–502 imposes four basic requirements upon employers: 1) to set regular pay periods; 2) to "pay each employee at least once in every 2 weeks or twice in each month"; 3) to pay the employee on the preceding workday if a payday falls on a non-workday; and 4) to not print an employ- ee's social security number on his or her pay stub or check.

Thus, by its plain language, section 3–502 addresses only *the timing* of paydays and the prohibition against social security numbers on pay documents.[11] Read in conjunction with sec- tion 3–507.2(a), it is clear that the Payment Law only author- izes a private cause of action by a current employee when the employer "fail[ed] to pay" the employee on a set schedule

---

10. The corresponding sections governing an award by a court that appear at subsection 3–507(b)(1) and 3–507.2(b) both provide that if "a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs."

11. In contrast, section 3–505, which is not at issue in this case, expressly requires an employer to pay an employee *"all wages due for work* that the employee performed before the termination of employ- ment." (Emphasis added.)

(including paydays at least twice a month), or failed to pay the employee in advance when a payday fell on a non-workday.

We need not determine whether failure to pay an employee more than a "token amount" of his or her wages could constitute a violation of section 3–502 because in the instant case Safeway did not fail to pay any of Marshall's wages. Rather, it garnished her wages pursuant to a Writ issued by the District Court. As relevant, section 3–503 prohibits an employer from "mak[ing] a deduction from the wage of an employee unless the deduction is[ ] ordered by a court of competent jurisdiction." Here, there is no dispute that Safeway was ordered by the District Court, on two separate occasions, to garnish Marshall's wages in accordance with the Writs. As explained, Safeway concedes that in five pay periods it garnished Marshall's wages when her entire wage should have been treated as exempt from garnishment and, in one pay period it exempted from garnishment an insufficient amount of her wage. This error in carrying out the instructions on the Writ did not constitute a "fail[ure] to pay" wages, however, especially when, as here, Safeway did not benefit from its mistake and the Maryland Rules furnish a procedure to promptly remedy such an error.

Safeway did not retain any of the over-garnished sums. Rather, all these sums were paid to Capital One to be "credited first against accrued interest on the unpaid balance of [Capital One's] judgment [and] then against the principal amount of the judgment." Md. Rule 3–646(j)(1). Thus, Safeway had no interest in the over-garnished amounts whatsoever. It paid Marshall and/or Capital One the entire amount earned by Marshall in each relevant pay period.

Moreover, Marshall had available to her the process established in Rule 3–646 to redress the over-garnishment. That rule, which governs garnishment of wages pursuant to CL section 15–601.1, allows a judgment creditor to obtain a writ of garnishment by filing "in the same action in which the judgment was obtained" a request for issuance of the writ and directs that, upon such a proper filing, the clerk "shall issue"

the requested writ. Md. Rule 3–646(b). The writ is to be served upon the garnishee and the garnishee must answer within 30 days of service. Md. Rule 3–646(d) & (e). Its answer must state whether the judgment debtor is an employee of the garnishee and the judgment debtor's rate of pay, and set forth any objections or defenses the garnishee intends to raise on its own behalf or on behalf of the judgment debtor. Md. Rule 3–646(e). A copy of the writ must be mailed to the judgment debtor at his or her last known address. Md. Rule 3–646(d). The judgment debtor is permitted to "file a motion at any time asserting a defense or objection." Md. Rule 3–646(e). If the judgment debtor asserts a defense or objection, "a hearing on the matter shall be scheduled promptly." Md. Rule 3–646(g).

Subsection (i) pertains to "[w]ithholding and remitting of wages" by the garnishee. It states:

> While the garnishment is in effect, the garnishee shall withhold all garnishable wages payable to the debtor. **If the garnishee has asserted a defense or is notified that the debtor has done so, the garnishee shall remit the withheld wages to the court.** Otherwise, the garnishee shall remit them to the creditor or the creditor's attorney within 15 days after the close of the debtor's last pay period in each month. The garnishee shall notify the debtor of the amount withheld each pay period and the method used to determine the amount. If the garnishee is served with more than one writ for the same debtor, the writs shall be satisfied in the order in which served.

(Emphasis added.)

Thus, under the Rule, Marshall "at any time" could lodge an objection to the over-garnishment of her wages by filing a motion in the District Court case brought by Capital One. Md. Rule 3–646(e). Upon notice of her objection, Safeway would have been obligated to remit any garnished amounts to the District Court, rather than to Capital One. Md. Rule 3–646(i). Marshall's motion would have had to have been heard "promptly." Md. Rule 3–646(g). In that forum, unlike in the

circuit court action brought by Marshall, the District Court could have assessed Safeway's compliance with the express language of the court's Writ and could have remedied any over-garnishment by directing Capital One, the recipient of any over-garnished amounts, to repay those amounts to Marshall.

Given the plain meaning of the Payment Law, the remedy for over-garnishment provided by the Rules, and Safeway's status as a mere garnishee, we agree with the circuit court's legal conclusion that Marshall's complaint failed to state a claim for which relief could be granted under the Payment Law. Accordingly, the court did not err in dismissing that claim.

## II.

### *Denial of Class Certification*

In Maryland, class certification is governed by Rule 2–231. Under subsection (a) of that rule, we review a circuit court's decision to grant or deny a motion for class certification for abuse of discretion. *See, e.g., Anne Arundel County v. Halle Dev., Inc.,* 408 Md. 539, 569, 971 A.2d 214 (2009); *Creveling v. Gov't Employees Ins. Co.,* 376 Md. 72, 90, 828 A.2d 229 (2003). "Implicit in this standard is a recognition that the basis of the certification inquiry is essentially a factual one, and thus, deference is due." *Creveling,* 376 Md. at 90, 828 A.2d 229.

> [F]or any case properly to be certified as a class action, four initial prerequisites must be satisfied: numerosity (the class is so numerous that joinder of all members is impracticable); commonality (there are questions of law or fact common to the class); typicality (the claims or defenses of the representative parties are typical of the claims or defenses of the class); and adequacy of representation (the representative parties and counsel will fairly and adequately protect the interests of the class).

*Philip Morris, Inc. v. Angeletti,* 358 Md. 689, 727, 752 A.2d 200 (2000). Specifically, Rule 2–231(a) states:

**Prerequisites to a class action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to these prerequisites, "[u]nless justice requires otherwise," one of the following criteria must be satisfied:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions, (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (C) the desirability or undesirability of concentrating the litigation of the claims in

the particular forum, (D) the difficulties likely to be encountered in the management of a class action.

Md. Rule 2–231.

In the instant case, Marshall sought certification of the following class:

All persons who are present or former employees, or will be future employees, of Safeway in Maryland, whose wages from Safeway were, are, or will be, subject to a garnishment order from a Maryland District Court using Form DC/CV 65, and from whom Safeway in any pay period, deducted, is deducting, or will in the future deduct, as a garnishment, any wages in violation of the garnishment order served, being served, or that will be served on it, during the three years prior to the filing of this action and hereafter.

She alleged that this class consists of at least 500 persons. This number largely was derived from a search of District Court case records showing cases identifying Safeway as a garnishee.[12]

With respect to commonality, Marshall alleged the following common issues of fact and law: whether Safeway's garnishment practices were contrary to the express language of the Writs; whether those practices were unlawful under the Payment Law; whether those practices breached actual or implied contracts between Safeway and its employees to pay wages due; whether the court should grant declaratory relief; whether the court should grant injunctive relief; and whether Safeway should pay prejudgment interest. She characterized these issues as "basically the entirety of the case." She suggested that "individual calculations" could be made following further discovery, but without the need for individual

---

12. Marshall argued in her motion for class certification that Safeway "should not be heard to contest numerosity" because it had refused to provide her with records relative to the putative class that would have allowed her to determine the class size with precision. Marshall did not otherwise allege that Safeway's assertedly deficient discovery responses prevented her from supporting her motion for class certification.

In its opposition to the motion, Safeway conceded numerosity.

hearings. Marshall asserted that her claims were typical of the class and that her attorney was experienced in class action litigation and would adequately represent the interests of the class.

The court denied Marshall's motion for class certification for a number of reasons, each of which it discussed in detail. As recounted above, it found that the motion was not timely filed; that Safeway's tender of relief to Marshall mooted her claim and required denial of class certification;[13] and that Marshall failed to satisfy the commonality and typicality prongs of Rule 2–231(a). It also concluded that common issues did not predominate over individual issues, and therefore a class action was not a superior method of adjudicating the controversy, under Rule 2–231(b)(3). Marshall challenges each of these bases for the denial of her motion. Because, as we shall explain, we perceive no abuse of discretion by the circuit court in denying class certification based upon Marshall's failure to satisfy the Rule 2–231(a) prerequisite of commonality, we shall affirm the circuit court's denial of the motion for class certification on that basis; we need not address the other grounds the court relied upon to support its ruling.

Under Rule 2–231(a)(2), there must be "questions of law or fact common to the class." In *Creveling, supra,* the Court of Appeals explained:

This prerequisite promotes convenience, uniformity of decision, and judicial economy, because common issues are

---

**13.** As noted, *supra,* during the pendency of this appeal, the Court of Appeals reversed this Court's decision in *Frazier,* 200 Md.App. at 285, 27 A.3d 583. We had held that a defendant's tender of individual damages to the prospective class representative prior to certification of a class mooted the representative plaintiff's claim and required denial of the motion for class certification. *Id.* at 303, 27 A.3d 583. In reversing that decision, the Court of Appeals held that a tender of relief prior to the filing of a motion for class certification did not require denial of class certification if, at the time of the tender, the plaintiff had not been afforded a reasonable time to seek certification, including necessary discovery in support of its motion. 430 Md. at 160–61, 59 A.3d 1016. Because we shall affirm the denial of class certification on an alternative ground relied upon by the trial court, the circuit court's reliance on *Frazier* is not determinative.

litigated only once on behalf of all class members. A common question must exist, but common questions need not predominate over individual issues. While the commonality requirement is less demanding than Rule 2–231(b)(3)'s requirement that common questions predominate over individual ones, *an issue of law or fact should be deemed "common" only to the extent its resolution will advance the litigation of the entire case.*

376 Md. at 92, 828 A.2d 229 (internal quotation marks and citations omitted) (emphasis added).

In *Creveling,* two cases were consolidated on appeal. In each case, the plaintiff alleged that the defendant automobile insurance company had breached its contract of insurance by denying the plaintiff's claim for Personal Injury Protection ("PIP") benefits based on the ground that the claimed expenses already had been paid by a collateral source. Each plaintiff sought monetary damages and injunctive and declaratory relief, and sued as a representative of a class. In both cases, the plaintiffs moved for class certification and their motions were denied. Also in both cases the court granted summary judgment in favor of the plaintiff on his individual claim. On appeal, the plaintiffs challenged the court's denial of their motions for class certification.

The Court of Appeals granted *certiorari* before consideration by this Court. The Court explained that the class actions suits had been brought in the wake of the Court's decision in *Dutta v. State Farm,* 363 Md. 540, 563–64, 769 A.2d 948 (2001), holding that automobile insurers were obligated to pay PIP benefits to insureds "regardless of the fact that a collateral source such an HMO incurred the expense." 376 Md. at 86, 828 A.2d 229. Following that decision and during the pendency of the class action suits, the defendants had changed their policies with respect to the payment of PIP benefits prospectively *and* had initiated a " 'remediation' program" to review past claims and pay any wrongfully denied benefits. *Id.*

The *Creveling* Court affirmed the denial of class certification based on the plaintiffs' failure to satisfy commonality, opining:

> The only possible common question presented herein is whether an insurer must pay PIP benefits to an insured when an expense is incurred on his or her behalf, regardless of whether a collateral source paid the bill. Appellants concede, however, that the question of whether appellees' policy of denying PIP benefits because of collateral source payments is legal has been answered by this Court in *Dutta*. Following *Dutta*, it became settled Maryland law that an insurer must pay PIP benefits to an insured when an expense is incurred on his or her behalf, regardless of whether a collateral source, such as an HMO, actually paid the bill. 363 Md. 540, 562, 769 A.2d 948, 961 (2001). When the instant cases were filed, merely nine days after the *Dutta* ruling, there was no question that appellees' practice of denying PIP benefits involving collateral source payments was illegal. The only question that remained was whether appellees owed particular individuals additional PIP benefits. As such, the legality of appellees' PIP payment policy is not a question common to the class.

*Id.* at 92–93, 828 A.2d 229. The Court went on to explain that under the circumstances the only remaining issues to be decided in the cases were individual in nature, such as the amount of each plaintiff's insurance policy limits and whether the charges incurred for medical treatment were reasonable. Therefore, the commonality of issues requirement for class certification was not satisfied.

Likewise, in the instant case, the circuit court found that Marshall had alleged the existence of one common issue, whether Safeway was "calculating [ ] appropriate withholding" pursuant to the Writs. It also found, however, that this issue no longer was in controversy as Safeway had conceded that its prior policy did not conform to the language of the Writ and had changed its policy "company wide" to comply with the requirement that it exempt from garnishment 30 times the federal minimum wage for all Maryland employees. Thus, the

only remaining issues were "individual" in nature, *i.e.*, "the salary of each employee," "the dates of the garnishment," and the amount of the federal minimum wage at the time of the garnishment. We agree with the circuit court that the only issue common to the putative class—whether Safeway had violated the Writ's direction to exempt from garnishment the greater of 75% of disposable wages due or 30 times the federal minimum wage—had been resolved by Safeway's acknowledgment that it had not garnished in accordance with that direction and its policy change in compliance with that direction effective August 2010. Accordingly, we perceive no abuse of discretion by the circuit court in denying the motion for class certification.

## III.

### *Denial of Motion to Compel Discovery*

"Trial courts are vested with a reasonable, sound discretion in applying [the discovery rules], which discretion will not be disturbed in the absence of a showing of its abuse." *Falik v. Hornage*, 413 Md. 163, 182, 991 A.2d 1234 (2010) (internal quotation marks and citation omitted). In the instant case, after the court denied Marshall's motion for class certification, it denied her motion to compel discovery as moot, reasoning that all of the outstanding discovery related to the putative class. The court previously had determined that Marshall's requested discovery and "the lack of discovery" responses by Safeway were not "really relevant or of great importance to the issue [of class certification]." This was so, according to the court, because the requested records were relevant only to establish numerosity and Marshall had been able to show that the class was sufficiently numerous without the information in the requested records.

As of the time of trial, Marshall's only outstanding discovery requests sought the names of "every present or former Maryland employee whose wages for work performed as a Maryland employee Safeway has garnished" in the relevant time period; identification of "every document that contains infor-

mation about Safeway's garnishment of the wages of present or former Maryland employees" during the relevant time period; and "[c]omputer-readable copies of every payroll record showing any garnishment of a Maryland employee of [Safeway]. . . ." Safeway objected to each of these requests on the basis that they were overly broad, unnecessarily burdensome, and unlikely to lead to relevant information.

Marshall contends the circuit court "erred in its handling of [her] discovery motions" because the requested discovery was essential to allow her to "test" Safeway's assertion that it had changed its policy with respect to the amount of wages it was exempting from garnishment for Maryland employees. Safeway's counsel, as an officer of the court, had proffered on numerous occasions that Safeway had changed its garnishment policy for Maryland effective August 14, 2010; Safeway introduced into evidence the Brossman affidavit so attesting, and attaching screen shots reflecting the revised computer software that implemented the new policy; and the parties stipulated that, had Brossman testified at trial, she would have stated that Safeway's Maryland garnishment policy had been changed effective August 14, 2010, to comport with the directive in the Maryland District Court standard Writ of Garnishment. The suggestion that Safeway was misrepresenting to the court, Marshall, and her counsel the fact that its Maryland garnishment rule had been changed is not well-taken.

At the precertification stage, the requested discovery only was relevant to the issue of numerosity, which Safeway conceded and the court found to be satisfied. In light of the court's decision to deny the motion to certify, the remaining issues raised in the motion to compel were moot. For these reasons, the circuit court did not abuse its discretion in denying Marshall's motion to compel discovery.

## IV.

### Denial of Declaratory and Injunctive Relief

■ Marshall contends the circuit court erred in granting judgment in favor of Safeway on her claims for injunctive and

declaratory relief. The circuit court concluded that Safeway's tender of full monetary relief to Marshall coupled with its stipulation that it had changed its Maryland garnishment rule to comport with the express language of the District Court Writ mooted any controversy between the parties.

Marshall asserts that, even accepting as true the facts set forth in Brossman's affidavit, "there was still a controversy between [Marshall] and [Safeway] that justified the grant [of the requested relief]": her outstanding claims for attorneys' fees and treble damages under the Payment Law. For the reasons already discussed, Marshall's allegations of over-garnishment by Safeway could not support a private cause of action under the Payment Law. Therefore, Marshall could not recover treble damages or attorneys' fees. Accordingly, we agree with the circuit court that at the time of trial there existed "no actual controversy between [the parties]"; there was "no injunctive relief that [it] possibly could have fashioned for [Marshall's] individual claims"; and declaratory relief was not warranted.

## V.

### *Dismissal of the Damages Claims*

As already discussed, the circuit court dismissed Marshall's Payment Law claim on two alternative grounds: the Payment Law did not give rise to a private cause of action and the circuit court lacked monetary jurisdiction over the claim. Marshall subsequently amended her complaint to substitute a claim for breach of contract in place of her Payment Law claim. The circuit court later dismissed this claim for lack of monetary jurisdiction. Citing *Rein v. Koons Ford, Inc.*, 318 Md. 130, 567 A.2d 101 (1989), Marshall maintains that the circuit court was obligated to aggregate the claims of the putative class members in determining whether "monetary jurisdiction" was adequately pleaded.[14] Because we have held

---

14. CJP section 4–402(d)(1)(ii) states that "the separate claims of the proposed members of [a] class *may be* aggregated to meet the minimum

that the circuit court properly dismissed Marshall's Payment Law claim for failure to state a claim and that class certification properly was denied, we need not reach this issue. Even if Marshall's contract claim had not been dismissed for lack of jurisdiction prior to the denial of class certification, it plainly would have been subject to dismissal thereafter.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**

---

amount in controversy required," *i.e.*, $5,000, for jurisdiction in the circuit court. (Emphasis added.) As explained, however, we need not determine in this case whether aggregation is mandatory or permissive.