No. C-130

## The First National Bank of Denver v. Columbia Credit Corporation
(499 P.2d 1163)

Decided August 8, 1972   Rehearing denied August 21, 1972.

Hughes and Dorsey, H. Robert Walsh, Jr., for petitioner.

Sobol & Sobol, Harry Sobol, for respondent.

Alfred G. Albert, Acting Solicitor of Labor, Harold C. Nystrom, Associate Solicitor, Harper Barnes, Regional Solicitor, Henry C. Mahlman, Attorney, Bobbye D. Spears, Attorney, Ronald G. Whiting, Attorney, Roger L. Rutter, Attorney, for James D. Hodgson, Secretary of Labor, United States Department of Labor, as amicus curiae.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

Columbia Credit Corporation (Columbia), in aid of execution of a county court judgment against David T. Reeves (employee), caused a writ of garnishment to be served upon his employer, The First National Bank of Denver (Bank). By answer the Bank traversed the garnishment claiming that all the wages then owing to the employee were exempt from garnishment by virtue of Title III of the Consumer Protection Act (15 U.S.C. § 1671, *et seq.*; hereinafter the Act) and the Regulations of the Secretary of Labor promulgated thereunder (29 C.F.R. § 870.1, et seq.). The county court ruled in favor of Columbia. Upon appeal to the superior court, the judgment was affirmed. From our review of the Act and the Regulations we have determined that the trial court erred and, therefore, its judgment must be reversed.

We granted the Bank's petition for a writ of certiorari for the reason that the issues presented here are of great public importance, not having been determined by this court nor by the highest court in any other jurisdiction. In addition, the judgment under review interprets the federal law contrary to the interpretation of the Secretary of Labor who is charged by law not only with the promulgation of regulations to carry out its provisions but with its enforcement.

■ Also, the resolution of the issue presented by this review is important to every creditor, to every employer, and to every employee who may use or become subject to garnishment proceedings in this state. The sole issue for resolution is: Whether, in view of the Secretary of Labor's regulation prescribing $96 as the "multiple" exemption formula applicable to employees paid on a bi-weekly pay period basis, the trial court erred in holding that the $48, 1-week exemption formula applied because the garnishment order was served in the first week of the bi-weekly payroll period? We answer this question in the affirmative.

I.

Supremacy of Federal Law

Article VI, Clause 2 of the Constitution of the United States declares:

"This Constitution, and the laws of the United States which

shall be made in Pursuance thereof; * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary nowithstanding."

■ Congress has expressly preempted the garnishment field as it relates to salaries and wages. It did so on the basis of a determination that the Consumer Credit Protection Act was needed to regulate commerce and to bring about uniformity in the bankruptcy laws, both of which areas are within the legislative competence of Congress.

In *Hodgson v. Cleveland Municipal Court,* 326 F.Supp. 419 (1971), the court said on this point:

"... It is determined and declared that interlocked section 1673(a) and section 1673(c) federally forbid the making, execution, or enforcement of any State court 'order or process' that violates the restrictions on garnishment contained in section 1673(c) or any regulation of the Secretary [of Labor] promulgated as 29 C.F.R. § 870.10. Likewise, the effect of any State garnishment law that underlies such offending State court 'order or process' is federally preempted."

The trial court recognized that the federal law preempted the state law as to garnishment restrictions, but interpreted the federal statutes and the regulations of the Secretary of Labor contrary to the interpretation advanced by the Bank. The Secretary of Labor was permitted to intervene here and file a brief as *amicus curiae.* The Secretary supports the interpretation contended for by the Bank.

The only reported decision dealing with this statute is *Hodgson v. Cleveland Municipal Court, supra.* This case involved an action by the Secretary of Labor for an injunction against a municipal court to enforce the restrictive garnishment provisions of the federal law. In an exhaustive and well reasoned opinion the court adopted the interpretation advocated by the Bank.

■ The Federal Wage Garnishment Law does not annul, alter, affect, or exempt any person from complying with state laws which *prohibit* garnishment or which provide for

*more limited garnishments* than are permitted under federal law. Whichever law is the more restrictive and results in the smaller garnishment is the one which must be applied in any given situation. (*See* W. H. Publication No. 1309, United States Department of Labor — Work-Price Standards Administration — Wage and Hour Division.)

■ The Secretary of Labor may exempt from the garnishment provisions of the federal act garnishments under the law of any state which are substantially similar to those provided in the Federal Wage Garnishment Law. § 1675. This is mentioned because in 1971 the Colorado General Assembly enacted a Uniform Consumers Credit Code which includes a section in limitation of garnishment substantially similar to the federal provision. It does not appear whether the Secretary of Labor has exempted garnishments here from the federal act. However, since this litigation arose prior to the 1971 state act, it is controlled by the federal act.

II.

Statutory Background

The Federal Wage Garnishment Law (Subchapter II, Title 15 U.S.C. § § 1671-1675) is part of the Consumer Credit Protection Act enacted by Congress in 1968 and became effective July 1, 1970 (Pub.L. 90-321, Title III).

Section 1671(a) contains the "Congressional findings and declaration of purpose." Congress found:

"(1) The unrestricted garnishment of compensation due for personal services encourages the making of predatory extensions of credit. Such extensions of credit divert money into excessive credit payments and thereby hinder the production and flow of goods in interstate commerce.

"(2) The application of garnishment as a creditors' remedy frequently results in loss of employment by the debtor, and the resulting disruption of employment, production, and consumption constitutes a substantial burden on interstate commerce.

"(3) The great disparities among the laws of the several States relating to garnishment have, in effect, destroyed the uniformity of the bankruptcy laws and frustrated the

purposes thereof in many areas of the country."

On the basis of those findings, Congress determined that the Act was necessary to carry out its responsibilities in the regulation of commerce and the establishment of uniform bankruptcy laws. § 1671(b).

Section 1672(a) defines "earnings" to mean "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus or otherwise, . . ." (b) defines "disposable earnings" as that part of *earnings* remaining after the deduction of any amounts required *by law* to be withheld; for example, withholding and social security taxes. (c) defines "garnishment" to mean any legal or equitable procedure through which the earnings of any individual are required to be withheld for the payment of a debt.

Other provisions, not relevant here, restrict discharge from employment (and criminal sanctions therefor), because an employee's "earnings have been subjected to garnishment for any one indebtedness."

The provisions of the Act specifically applicable to the controversy here are set forth in § 1673(a):

"Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed (1) 25 per centum of his disposable earnings for that week, or (2) The amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable, whichever is less. *In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2)."* (Emphasis added.)

In compliance with the underscored directive of § 1673(a), the Secretary of Labor issued these regulations:

"(c) *Pay for a period longer than 1 week.* In the case of disposable earnings which compensate for personal services

rendered in more than 1 workweek, the weekly statutory exemption formula must be transformed to a formula applicable to such earnings providing equivalent restrictions on wage garnishment.

"(1) The 25 percent part of the formula would apply to the aggregate disposable earnings for all the workweeks compensated.

"(2) The 'multiple' of the Federal minimum hourly wage equivalent to that applicable to the disposable earnings for 1 week is represented by the following formula: The number of workweeks, or fractions thereof (x) x 30 x the applicable Federal minimum wage ($1.60). For the purpose of this formula, a calendar month is considered to consist of 4 1/3 workweeks. *Thus,* so long as the Federal minimum hourly wage is $1.60 an hour, *the 'multiple' applicable to. the disposable earnings for a 2-week period is $96 (2 x 30 x $1.60)*; for a monthly period, $208 (4 1/3 x 30 x $1.60); and for a semi-monthly period, $104 (2 1/6 x 30 x $1.60). The 'multiple' for any other pay period longer than 1 week shall be computed in a manner consistent with section 303(a) of the Act and with this paragraph." (Emphasis added.) 29 C.F.R. § 870.10(c)(1)(2).

### Factual Background

The Bank pays its employees at an hourly rate on a bi-weekly pay period basis. On November 5, 1970, during the first week of the two-week pay period, which ran from October 31 through November 13, 1970, the Bank was served with the garnishment order in question. At the time of service, Mr. Reeves was generally paid about $155.86 in disposable earnings for a bi-weekly pay period, had worked a total of some 28 1/4 hours in the pay period, and there was then owing to his credit approximately $59.78 in disposable earnings.

The trial court, adopting Columbia's interpretation, held that the $48, 1-week exemption formula of § 1673(a)(2) applied inasmuch as the writ was served during the first week of the two-week pay period. Under this interpretation $48 of the $59.78 in disposable earnings was exempt, leaving a

balance of $11.78 (rather than .25 x 59.78 = $14.94) for which amount the court entered judgment against the Bank.

### III.

The answer to the question for resolution set forth in the opening part of this opinion obviously lies in 15 U.S.C. § 1673(a) and the regulations promulgated by the Secretary of Labor in compliance with the Act. The Bank contends that because the pay period is for a *pay period other than a week,* the regulations of the Secretary of Labor set forth above are controlling. This, of course, is true if "pay for a period longer than 1 week" means the *pay period* which governs the relationship between the Bank and its employee as to the payment of wages — (payroll period), rather than the period between the last pay day and the date of the levy of the writ of garnishment, which in this case was less than one week — the interpretation espoused by Columbia.

Judge Thomas, in *Hodgson, supra,* analyzed this aspect of the problem in Part IV of his memorandum opinion in great detail. Those who require a more comprehensive treatment than appears here are referred to that opinion.

A few references to key provisions will suffice to demonstrate that the exemption allowed by the Act applies to the *disposable earnings* for a "workweek," the *period* between regular pay checks as established by the employer — in other words, *the payroll period.*

The Secretary of Labor in his *interpretations* noted that: "The statutory exemption formula applies directly to the aggregate disposable earnings for 1 workweek, or a lesser period. Its intent is to protect from garnishment and save an individual earner, the specified amount of compensation for his personal services rendered in the workweek, or lesser period. Thus, so long as the Federal minimum wage prescribed by section 6(a)(1) of the Fair Labor Standards Act of 1938 is $1.60 an hour —

"(1) If an individual's disposable earnings for a workweek or lesser period are $48 (30 x $1.60) or less, his earnings may not be garnished in any amount.

"(2) If an individual's disposable earnings for a workweek or

lesser period are more than $48, but less than $64, only the amount above $48 is subject to garnishment.

"(3) If an individual's disposable earnings for a workweek or lesser period are $64 or more, 25 percent of his disposable earnings is subject to garnishment." 29 C.F.R. § 870.10 (b)(1)(2)(3).

The statutory formula § 1673(a) applied to a workweek or lesser period, but did not provide the specific formula for earning periods longer than 1 week. However, the Act delegated to the Secretary of Labor the responsibility for prescribing a *multiple* of the Federal minimum hourly wage *equivalent* for earnings for pay periods other than a week. § 1673(a)(2). The 25 per centum restriction, of course, applies to wages earned for any pay period. § 870 (c)(1).

In Determinations and Interpretations of the Secretary of Labor (Ch. V, Subchapter D, Part 870, Subpart B-29 C.F.R. § 870.10), the following, pertinent to the issue here, appears:

"(c) Pay for a period longer than 1 week. In the case of disposable earnings which compensate for personal services rendered in more than 1 workweek, *the weekly statutory exemption formula must be transformed to a formula applicable to such earnings providing equivalent restrictions on wage garnishment.*

"(1) The 25 percent part of *the formula would apply to the aggregate disposable earnings for all the workweeks compensated.*

"(2) The 'multiple' of the Federal minimum hourly *wage equivalent* to that applicable to the *disposable earnings for 1 week* is represented by the following formula: The number of *workweeks,* or fractions thereof (x) x 30 x the applicable Federal minimum wage ($1.60). For the purpose of this formula, a calendar month is considered to consist of 4 1/3 workweeks. *Thus, so long as the Federal minimum hourly wage is $1.60 an hour, the 'multiple' applicable to the disposable earnings for a 2-week period is $96* (2 x 30 x $1.60); for a monthly period, $208 (4 1/3 x 30 x $1.60); and for a semi-monthly period, $104 (2 1/6 x 30 x $1.60). The

'multiple' for any other pay period longer than 1 week shall be computed in a manner consistent with section 303(a) of the Act and with this paragraph." (Emphasis added.)

We note in § 1673 that "the maximum part of the *aggregate disposable earnings . . . for any workweek* which is subjected to garnishment may not exceed (1) 25 per centum of his *disposable earnings for that week* or (2) the amount by which his *disposable earnings for that week exceed* thirty times the Federal minimum hourly wage . . . *in effect at the time the earnings are payable,* whichever is less."

The language in § 870.10(c) mentions *aggregate disposable earnings for any workweek, disposable earnings for that week* and provides in the formula (2) that the disposable earnings for *that week* which exceed thirty times the Federal minimum hourly wage in effect *at the time the earnings are payable* are subject to garnishment. Clearly, the disposable earnings subject to garnishment are those for the workweek at the time the earnings are payable — the payroll period, and if the *pay period* is *other than a week,* the regulation must prescribe a *multiple equivalent* of the formula in paragraph (2).

This being the case, it appears that Congress intended that an employee's *disposable earnings,* where the *pay period is bi-weekly,* are to be exempt from garnishment to the extent of $96 or 25 per cent of those earnings, whichever is the lesser amount, *regardless of the point in time within such pay period when the writ of garnishment is served.* There is no language, it seems to us, which is susceptible to an interpretation that the exemption formula may be computed in a manner that would relate the exemption for 1-week to the wages earned for a *partial pay period* — 6 days of a 2-week pay period, as here, for instance. The interpretation of the Secretary of Labor, as it appears in the regulations, is a reasonable application of statutory policy and, therefore, should be followed. *Public Utilities Commission v. United States,* 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470; *United States v. Howard,* 352 U.S. 212, 77 S.Ct. 303, 1 L.Ed.2d 261; *Mitchell v. Budd,* 350 U.S. 473, 76 S.Ct. 527,

100 L.Ed. 565; 1 *Davis, Admin. Law* § § 5.03, 5.04. In *Federal Security Administrator v. Quaker Oats Company,* 318 U.S. 218, 63 S.Ct. 589, 87 L.Ed. 724, the court stated: "[W]e have repeatedly emphasized the scope that must be allowed to the discretion and informed judgment of an expert administrative body .... These considerations are especially appropriate where the review is of regulations of . general application adopted by an administrative agency under its rule-making power in carrying out the policy of a statute with whose enforcement it is charged." *Id.,* at 227-28.

The *interpretation* by the Secretary of Labor specifically found the exemption for a 2-week *workweek* to be $96. By the proper timing of the service of the writ of garnishment, it would have been possible for Columbia to have levied against $155.86. Applying the Secretary's exemption formula, Columbia could have garnished the lesser of $59.86 ($155.86 − $96) or $38.96 (25 percentum of $155.86).

As a pertinent conclusion to this discussion, we again quote from the *Hodgson* opinion:

"This garnishment shield of section 1673(a) is expressly shaped to fit 'any workweek,' and that week's 'disposable earnings.' Use of the week as the unit for computing the maximum of disposable earnings subject to garnishment is a reasonable exercise of legislative power. Congress has determined that weekly wage earners especially need to be protected from excessive garnishment. Area wage surveys of the United States Department of Labor, received in evidence, disclose that throughout the country the overwhelming majority of plant workers are paid on a weekly basis, and a majority of office workers are paid on a weekly or bi-weekly basis. Congressional selection of an employee's weekly disposable earnings as the unit for computing his garnishment maximum is made plain in Conf.Rept.No. 1397, 90th Cong.; 2d Sess. p. 2029 (1968)."

. . . .

"The provisions of these regulations applicable to pay periods longer than one week are declared and determined to conform to the language and intent of section 1673(a) and its

specified standards."

The judgment is reversed and the cause is remanded to the Superior Court with directions to remand to the County Court for dismissal.

MR. JUSTICE GROVES dissenting.

MR. JUSTICE GROVES dissenting:

I respectfully dissent. To me the "pay period" ended at the time that the garnishment was served, that being the terminus of the wages garnisheed. Therefore, I would hold that the exemption should have been $48.00 and would affirm.