BONITA H. MARSHALL v. SAFEWAY, INC.
NO. 56, SEPTEMBER TERM, 2013


IN THIS PUTATIVE CLASS ACTION SUIT AGAINST SAFEWAY FOR APPLYING A LEGALLY INCORRECT STANDARD IN ESTABLISHING AN EMPLOYEE'S EXEMPTION IN WAGE GARNISHMENT PROCEEDINGS, THE COURT HELD:

A. WITH EXCEPTIONS NOT RELEVANT HERE, THE CURRENT REQUIRED EXEMPTION IS THE GREATER OF (1) 75% OF THE DISPOSABLE WAGES DUE, OR (2) 30 TIMES THE MINIMUM HOURLY WAGE UNDER THE FEDERAL FAIR LABOR STANDARDS ACT;

B. EMPLOYEES HAVE A DIRECT CIVIL CAUSE OF ACTION UNDER MD. CODE, § 3-507.2 OF THE LABOR AND EMPLOYMENT ARTICLE (LE) AGAINST EMPLOYERS WHO DEDUCT FROM THE EMPLOYEE'S WAGE MORE THAN IS ALLOWED BY LE § 3-503;

C. THE COURT MAY ALLOW AND CONTROL DISCOVERY REGARDING PUTATIVE MEMBERS OF THE CLASS, PRIOR TO CLASS CERTIFICATION, IF NECESSARY TO A DETERMINATION OF WHETHER THE CLASS SHOULD BE CERTIFIED; AND

D. THE CIRCUIT COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE REPRESENTATIVE PLAINTIFF'S MOTION TO CERTIFY THE CLASS, BASED ON FINDINGS THAT (1) DISCOVERY REGARDING PUTATIVE CLASS MEMBERS WAS NOT NECESSARY IN THIS CASE; (2) THE MOTION TO CERTIFY THE CLASS WAS UNTIMELY; (3) INDIVIDUAL ISSUES PREDOMINATE OVER ANY COMMON ISSUES; AND (4) PROCEEDINGS UNDER MD. RULE 3-646 TO CHALLENGE AMOUNTS WITHHELD PURSUANT TO WRITS OF GARNISHMENT WERE SUPERIOR TO A CLASS ACTION.

Circuit Court for Prince George's County
Case No. CAL10-23978

Argued: February 10, 2014

IN THE COURT OF APPEALS
OF MARYLAND

No. 56

September Term, 2013

_____

BONITA H. MARSHALL
v.
SAFEWAY, INC.

_____


Barbera, C.J.,
Harrell
Battaglia
Greene
Adkins
McDonald
Wilner, Alan M. (Retired,
specially assigned),

                                    JJ.


_____

Opinion by Wilner, J.
   Adkins, J., concurs and dissents.
   McDonald, J., concurs.


_____

Filed: March 26, 2014

This case began as a dispute over whether twenty-nine dollars and sixty-four cents was wrongfully deducted by respondent Safeway Inc. from the wages of its employee, Bonita Marshall, in response to two writs of garnishment issued by the District Court of Maryland pursuant to Md. Rule 3-646. That dispute could easily and quickly have been fully resolved in the District Court garnishment actions. Instead, we have a class action suit that has been in litigation for three-and-a-half years, all but two weeks of which has been after Safeway at least tacitly acknowledged its error, tendered the excess deduction to Ms. Marshall, and changed its corporate policy to apply thenceforth the correct garnishment exemption standards.

So far, Ms. Marshall has lost in court. The Circuit Court for Prince George's County declined to certify the class and entered judgment in favor of Safeway, and the Court of Special Appeals affirmed that judgment. *Marshall v. Safeway*, 210 Md. App. 545, 63 A.3d 672 (2013). Although we disagree with one of the lower courts' holdings, we shall affirm the judgment of the Court of Special Appeals.

Nine issues are presented for our review, but they may be fairly consolidated into three:

(1) What is the applicable standard for determining the amount of wages exempt from garnishment;

(2) Do employees have a private right of action against their employer under

Maryland Code, § 3-507.2 of the Labor and Employment Article (LE) for miscalculating the amount of exemption and, as a result, deducting more from the employee's wage than is proper; and

(3) Did the Circuit Court for Prince George's County err in denying class certification in this case?

## BACKGROUND

### Applicable Exemption

In order to put what happened into a proper context, it is helpful, at the outset, to examine the laws governing the amount of wages that are exempt from attachment through a garnishment action. There is a conflict among a Maryland statute (Maryland Code, § 15-601.1 of the Commercial Law Article (CL)), a Federal statute (15 U.S.C. § 1673), and the preprinted Maryland District Court form (DC/CV 65) that is commonly used by creditors seeking to garnish wages.[1] It is that conflict that led to this case.

CL § 15-601.1(b) provides that, in Caroline, Kent, Queen Anne's, and Worcester counties, the amount of wages exempt from attachment (garnishment), for each workweek, is the greater of (i) 75% of the disposable wages due, or (ii) 30 times the minimum hourly

---

[1] The District Court Form at issue in this case was the one modified in 2008. The current Form is the one modified in 2011. There is no substantial difference between the two for purposes of this case.

wage under the Federal Fair Labor Standards Act (FLSA) in effect at the time the wages are due.[2] In the rest of the State, including Prince George's County, where Marshall was employed and where the garnishment writs were issued, the amount exempt from garnishment under the statute is different; it is the greater of (i) the product of $145 multiplied by the number of weeks in which the wages due were earned, or (ii) 75% of the disposable wages due. In both cases, there is added to the exemption any medical insurance payment deducted from an employee's wages by the employer.

In both instances, one prong of the formula is the same – 75% of the disposable wages due. The difference lies in the alternative prong – $145 per week as opposed to 30 times the FLSA minimum hourly wage.

In contrast, 15 U.S.C. § 1673(a), which is part of the Federal Consumer Protection Act, provides, subject to exceptions set forth in subsection (b) and in § 1675, that "the maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment may not exceed (1) 25 per centum of his disposable earnings for that week, or (2) the amount by which his disposable earnings for that week *exceed* thirty times the Federal minimum hourly wage prescribed in [FLSA] in effect at the time the earnings are payable, whichever is less." (Emphasis added). There is no mention in § 1673 of medical insurance payments deducted by the employer.

---

[2] Section 15-601.1(a) defines "disposable wages" as "the part of wages that remain after deduction of any amount required to be withheld by law."

It is important to note that the State law measures the amount of *exemption*, whereas the Federal statute measures the maximum amount that may be *garnished*, which is why the former applies the *greater* of the alternatives and the latter applies the *lesser* of them. The mirror image of both produces the same result with respect to the four Eastern Shore counties, but not with respect to the rest of the State.

To complicate things further, Form DC/CV 65 states, in the section captioned "INSTRUCTIONS TO GARNISHEE," that "Commercial Law Article §§ 15-601 to 607 of the Annotated Code of Maryland and Rule 3-646 govern wage attachment procedures." In the section captioned "EXEMPTIONS FOR GARNISHMENT," however, the form states:

> "THE FOLLOWING ARE EXEMPT FROM GARNISHMENT: (1) the greater of; (a) 75 percent of the disposable wages due; OR (b) 30 times the federal minimum hourly wages under the Fair Labor Standards Act in effect at the time the wages are due; AND (2) any medical insurance payment deducted from an employer's [*sic*] wages by the employer. Other federal and state exemptions may be available."

Thus, though stating that CL §§ 15-601 to 607, which includes § 15-601.1, governs all wage attachments, the District Court form adopts, for the entire State, the part of the statutory formula applicable only to the four Eastern Shore Counties and, to that extent, is both inconsistent with the Maryland statute and internally ambiguous. On the other hand, to the extent that an amount equal to 30 times the FLSA minimum hourly wage will produce a larger exemption than $145 per week, the § 15-601.1 statutory formula applicable in Prince George's County is inconsistent with the Federal law.

- 3 -

It is easy to see how this can be confusing, but there is a simple answer.  Although neither side has addressed the matter directly, the law is clear that, by virtue of another section of the Federal law – 15 U.S.C. § 1677 – the Federal law preempts State law to the extent that the latter "allows a greater amount of a debtor's earnings to be reached than does the federal law . . . ." *Anderson v. Anderson*, 285 Md. 515, 525, 404 A.2d 275 (1979).[3] States can provide a **greater** exemption than that provided by the Federal law, but not a **lesser** one.  Thus, it is not permissible for Maryland to exempt only $145 per week if that would be greater than 75% of disposable wages but would produce less of an exemption than the Federal requirement of 30 times the FLSA minimum hourly wage.

In other words, notwithstanding the ambiguity arising from the blanket instruction in the District Court form that CL §§ 15-601 through 15-607 govern wage attachment procedures, by virtue of the Federal preemption, the District Court Form got it right in stating the formula to be applied in determining the exemption – **the greater of 75% of disposable wages or 30 times the FLSA minimum hourly wage**.

**The Garnishments and Safeway's Response**

The relevant evidence in this case comes from stipulated facts and a few undisputed

---

[3] *See* also *First National Bank of Denver v. Columbia Credit Corporation*, 499 P.2d 1163 (Col. 1972); *In re Marriage of Eklofe*, 586 N.W.2d 357 (Iowa 1998); *Phillips v. General Finance Corp.*, 297 So.2d 6 (Fla. 1974); *Willhite v. Willhite*, 546 P.2d 612 (Okla. 1976); *Hodgson v. Hamilton Municipal Court*, 349 F. Supp. 1125 (S.D. Ohio 1972).

documents. Marshall was an hourly employee of Safeway from November 2005 to December 2010. In February 2009, Capital One Bank obtained a judgment against her in the amount of $1,070 plus $60 costs and $160 attorneys' fees. On April 15, 2009, at Capital One's request, the District Court issued a Writ of Garnishment on Wages against her in the amount of $1,297, which was directed to Safeway. The writ was received by Safeway's payroll garnishment department on April 21, 2009.

At the time, the Safeway payroll garnishment program for Maryland employees applied the exemption formula exactly as set forth in CL § 15-601.1. Because the writ was issued in Prince George's County and because, as between $145 per week and 75% of Marshall's disposable wages, the former produced the greater exemption, that is what Safeway applied for the three pay periods during which the garnishment writ was in effect. The balance of the wages otherwise due to Marshall was paid to Capital One Bank. That garnishment was released by Capital One in July 2009.

A second writ was issued on August 10, 2009, but it was released by Capital One seven days later and apparently was never served on Safeway. In July 2009, a Legal Aid Bureau attorney contacted Safeway's payroll department in Phoenix, Arizona, on behalf of Marshall and pointed out that the appropriate exemption was that produced by the Federal statute – 30 times the FLSA minimum hourly wage. An official in that department, Kristin Brossman, responded that she had checked with the guidebook used by Safeway – the American Payroll Association's Guide to Federal and State Garnishment Laws – and

concluded, perhaps incorrectly, that Safeway was correct in applying the standard set forth in CL § 15-601.1. No objection to the amounts withheld and paid to Capital One was made in the garnishment proceeding.

On July 3, 2010, Safeway's payroll department received another garnishment writ from the District Court that had been issued on behalf of Capital One Bank on June 21, 2010. Again, Safeway applied the $145 per week exemption specified in CL § 15-601.1 for three pay periods, and again, no objection was made in the garnishment proceeding.

**Proceedings In This Case**

In August 2010, Marshall filed this lawsuit against Safeway in the Circuit Court for Prince George's County on behalf of herself and

> "[a]ll persons who are present or former employees, or will be future employees, of Safeway in Maryland, whose wages from Safeway are, or will be, subject to a garnishment order from a Maryland District Court using Form DC/CV 65, and from whom Safeway in any pay period deducted, is deducting, or will in the future deduct, as a garnishment, any wages in violation of the garnishment order served, being served, or that will be served on it, during the three years prior to the filing of this action and hereafter."

The action was based principally on Maryland Code, § 3-507.2 of the Labor and Employment Article (LE), which permits an employee to maintain an action against an employer who fails to pay wages in accordance with LE §§ 3-502 or 3-505 to recover the unpaid wages, and Md. Rule 2-231, governing class actions.

Marshall alleged that the class of Maryland employees on behalf of whom she purported to sue was so numerous that joinder of all members was impracticable. In that regard, she alleged that, in the preceding three years, Safeway had been named as a garnishee in 379 new District Court actions (in which child support was not involved) and that the class consisted, at a minimum, of potentially 400 persons from whose wages excessive amounts had been withheld by Safeway. She alleged as well that among issues common to the members of the class were whether Safeway's garnishment practice continued to violate the writs issued by the District Court and the Maryland Wage Payment Law (LE § 3-503) and whether the excessive deductions were the result of a bona fide dispute, and that those common issues predominated over issues affecting only individual members of the class.

Ten days after the class action suit was filed, Safeway changed its payroll garnishment system for Maryland to conform with the standards set forth in the Exemption instruction in the District Court Form – the greater of 75% of disposable wages or 30 times the FLSA minimum hourly wage – retroactive to the garnishments received in April 2009 and July 2010. In conformance with that decision, Safeway tendered to Marshall the amounts that would have been paid to her had those standards been applied at the time – a total of $45.25 – plus interest on that amount.[4]

---

[4] Marshall initially calculated the excess withholding as $29.64. Safeway pointed out that the correct amount was $45.25. Actually, Safeway made several tenders – by check and in cash – and all were rejected.

Safeway's initial judicial response to the complaint was a motion to dismiss based, in part, on (1) lack of jurisdiction – that the damages were less than $5,000 and exclusive jurisdiction was in the District Court, and (2) that the complaint failed to state a claim for violation of LE § 3-502, which was a prerequisite for a private action under LE § 3-507.2. After a hearing, the court, on November 1, 2010, dismissed the damage claim on both of those grounds. It denied the motion with regard to the claims for declaratory and injunctive relief, at least temporarily, but reserved that issue for future consideration. Following that ruling, Safeway filed an answer noting that it had changed its garnishment procedure to follow the Federal exemption for all Maryland employees and attached an affidavit from Ms. Brossman confirming that averment. Marshall never contested that Safeway had changed its policy, although she later expressed concern, without offering any basis for that concern, that Safeway may some day reinstitute its previous policy.

The next event was an amended complaint by Marshall, which the court determined had effectively been filed as of November 24, 2010. The amended complaint deleted the claim for damages under LE § 3-507.2 in light of the court's ruling but added a common law claim for breach of contract; otherwise, it was the same as the initial complaint. That, too, was met with a motion to dismiss or, alternatively, for summary judgment.

In December 2010, the court entered a scheduling order that (1) set a pretrial conference for April 8, 2011, (2) required that any additional parties be added no later than 60 days before that conference, and (3) required further that all discovery be completed no

later than 30 days before the conference. In March 2011, Marshall filed a motion to compel discovery and for sanctions. With her initial complaint, Marshall had filed a discovery request seeking a great deal of information regarding all Maryland employees of Safeway against whom writs of garnishment had been issued during the preceding three years, including payroll records for those employees. Safeway had produced the information with respect to Marshall, but declined to produce it regarding any other employees. In her motion to compel, she claimed that she needed that information in order to support an eventual motion to certify the class. The motion to compel remained dormant until November 21, 2011.

The pretrial conference was held as scheduled on April 8, 2011. No motion to certify the class had yet been filed. Perhaps in light of that fact, the court set the case in for a one-day trial on November 21, 2011. In a Pre-trial Conference Report, the court recorded that all amendments to the pleadings had been made, all parties had been joined and served, and only three witnesses would testify – one for the plaintiff and two for the defendant. Nothing was said about the motion to compel discovery or for sanctions.

On October 31, 2011, fifteen months after the initial complaint was filed and three weeks before the scheduled trial, Marshall filed a motion to certify the class, claiming that the class was identifiable from Safeway's computer records and that there were 499 identified District Court garnishments involving Safeway since August 2007 (three years prior to the filing of the complaint). Though still complaining about Safeway's failure to

provide discovery regarding the other members of the putative class, the motion claimed that there were, at a minimum, potentially more than 500 Maryland employees of Safeway whose wages were unlawfully garnished. Safeway opposed the motion.

All of this came to a head on November 21, 2011, the date set for trial. The predominant issue was the motion to certify the class, with focus on the criteria set forth in Md. Rule 2-231(a), (b), and (c) for prosecuting such an action:

Section (a): the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class.

Section (b): (1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect individual members of the class that would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class that, as a practical matter, would be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or declaratory relief with respect to the class as a whole; or

(3) questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Section (c): the court determine class certification "as soon as practicable after commencement of the action," considered in the light of Ms. Marshall's complaint about the failure of Safeway to provide discovery.[5]

After hearing from counsel on those and other matters, the court concluded, as to certification of the class:

(1) Marshall had established "numerosity," which had essentially been conceded by Safeway, and, as a result, the failure to provide discovery regarding the 500 or more putative members of the class was largely irrelevant for that purpose.

(2) The motion to certify was filed late – 15 months after the action was filed and only three weeks before trial – and, if granted, would make it impossible to conduct the trial as scheduled.

---

[5] Rule 2-231 is patterned after Fed. Rule of Civ. Proc. 23. *See* Source Note to Rule 2-231. In 2003, the Federal Rule was amended to require that a certification determination be made "at an early practicable time," rather than "as soon as practicable." According to the Federal Advisory Committee, the change was made because the then-existing language "neither reflects prevailing practice nor captures the many valid reasons that may justify deferring the initial certification decision." *See* Advisory Committee Notes regarding 2003 amendments to subdivision (c)(1) of the Federal Rule. The Maryland Rule has not been so amended.

- 11 -

(3) Upon its interpretation of the Court of Special Appeals's Opinion in *Frazier v. Castle Ford*, 200 Md. App. 285, 27 A.3d 583 (2011) (later reversed in part in *Frazier v. Castle Ford*, 430 Md. 144, 59 A.3d 1016 (2013)), the tender of all damages claimed by Marshall, coupled with Safeway's adoption of the Federal standard that would preclude any further cases such as this, made the case moot.

(4) Although there was a common issue of Safeway's use of an incorrect standard to determine the appropriate exemption (until it changed its policy), the question of how that affected the amounts actually exempted with respect to the 500+ other members of the class depended on facts peculiar to each garnishment – the employee's gross and disposable wage, the FLSA minimum hourly wage in effect at the time of the various garnishments, whether the garnishments were for child or spousal support or taxes, as to which different standards apply – and that those individual circumstances predominate over the common issue that no longer existed in any event. The court observed that those disparities also raised a question of whether Marshall's claim was typical and whether she properly could serve as a class representative.

(5) The issue of the proper exemption to be applied can be raised in the garnishment case under Rule 3-646, in which the creditor is a party, and which can be determined more expeditiously in the District Court, and that procedure is a superior method of adjudicating the issue. The court noted that, if the case proceeded as a class action, the creditors in the 500+ garnishment cases may have to be added, and that Safeway had gained

nothing for itself by its application of CL § 15-601.1 – that the parties really in conflict were the employee and the garnishing creditor and that the creditor had a greater interest in the matter than did Safeway.

Upon those findings, the court held that class certification was not appropriate and, for that reason, denied the motion to certify. In light of Marshall's concession that the motion to compel discovery related to the question of class certification, that motion was denied as moot.

Noting that it had previously dismissed Marshall's claims for damages, the court turned to the only remaining issue – declaratory and injunctive relief. Based on its reading of the Court of Special Appeals's decision in *Frazier, supra*, the court concluded that there was no longer any controversy between Marshall and Safeway and that the case was therefore moot. Upon those findings, the court entered judgment in favor of Safeway, which the Court of Special Appeals, finding no error, affirmed.

DISCUSSION

**Appropriate Exemption**

We have concluded, *supra*, and Safeway essentially acknowledged at the outset of the case, that, in relying on the clear wording of the Maryland statute, it had applied the wrong standard in determining the amounts to be exempted and that it had changed its policy to correct that error. Although Marshall suggests that, at some future point, Safeway might

- 13 -

revert to its previous policy, that appears to be most unlikely, especially in light of our holding that the proper formula is that stated on the District Court Form. That is no longer an issue. Safeway cannot lawfully revert to its previous policy, and there is nothing in this record even to suggest that it may attempt to do so. It has nothing to gain from applying an incorrect formula.

**Right of Action Under LE § 3-507.2**

Marshall's initial complaint was founded largely on LE § 3-507.2 which, as noted, permits an employee to sue the employer for violating LE § 3-502 or 3-505. The Circuit Court, in an interlocutory ruling, held that the statute, by its own wording, did not apply to a violation of LE § 3-503, which was the asserted basis of Marshall's claim. That ruling resulted in the dismissal of her statutory claim for unpaid wages, treble damages, and attorneys' fees. The Court of Special Appeals agreed that the statute did not apply to a violation of § 3-503. That is an issue of special importance, which has attracted *amicus* briefs from the Commissioner of Labor and Industry and the Public Justice Center. We disagree with the rulings of the two lower courts.

LE § 3-507.2 is part of the Wage Payment and Collection Law, which comprises title 3, subtitle 5 of the Labor and Employment Article and consists of §§ 3-501 through 3-509 of that Article. Because they are, and since their initial enactment have been, part of one comprehensive regulatory and remedial scheme, all of those sections, to the extent relevant

- 14 -

under the facts of the case, must be read together harmoniously. In this case, we are concerned with §§ 3-501(c)(1), 3-502(a), 3-503, 3-505(a), 3-507, and 3-507.1, as they relate to § 3-507.2.

LE § 3-501(c)(1) defines "wage," for purposes of the law, as "all compensation that is due to an employee for employment." Section 3-502(a) requires employers to set regular pay periods and, with an exception not relevant here, to "pay each employee at least once in every 2 weeks or twice each month." Section 3-503 provides:

> "An employer may not make a deduction from the wage of an employee unless the deduction is:
>     (1) ordered by a court of competent jurisdiction;
>     (2) authorized expressly in writing by the employee;
>     (3) allowed by the Commissioner [of Labor and Industry]; or
>     (4) otherwise made in accordance with any law or any rule or regulation issued by a governmental unit."

Section 3-505(a) deals with wages due an employee whose employment has been terminated. With an exception for accrued leave, it requires employers to pay all wages due for work performed prior to the termination on or before the day the employee would have been paid, but for the termination.

Sections 3-507 and 3-507.1 provide for enforcement of the law by the Commissioner of Labor and Industry. Section 3-507(a) permits the Commissioner, upon a determination that "this subtitle has been violated" to (1) attempt to resolve issues involved in the violation informally, (2) with the consent of the employee, request the Attorney General to bring an action on behalf of the employee, or (3) bring an action on his/her own on behalf of the

- 15 -

employee. If, in such an action, the court finds that the employer withheld the wage "in violation of this subtitle" and not as a result of a bona fide dispute, the court may award the employee an amount up to three times the wage and reasonable attorneys' fees.

Section 3-507.1, added in 2010, provides an alternative administrative remedy. On a complaint of failure to pay wages not exceeding $3,000, the Commissioner, after review and investigation and a conclusion that "this subtitle" was violated, may order the employer to pay the wages. The employer may request a *de novo* hearing under the contested case provisions of the Administrative Procedure Act (Maryland Code, Title 10, Subtitle 2 of the State Government Article), but in default of a timely request by the employer, the Commissioner may proceed in District Court to enforce his/her order.

Section 3-507.2(a) provides the employee with a private right of action to collect unpaid wages:

> "Notwithstanding any remedy available under § 3-507 of this subtitle, if an employer fails to pay an employee in accordance with § 3-502 or § 3-505 of this subtitle, after 2 weeks have elapsed from the date on which the employer is required to have paid the wages, the employee may bring an action against the employer to recover the unpaid wages."

As in § 3-507, § 3-507.2(b) provides that, in an action under § 3-507.2(a), if the court finds that the employer withheld the wage "in violation of this subtitle" and not as a result of a bona fide dispute, the court may award an amount up to three times the wage and reasonable attorneys' fees.

The Circuit Court and the Court of Special Appeals gave § 3-507.2 a literal reading.

- 16 -

They pointed out that it permits a private cause of action if the employer fails to pay wages in accordance with § 3-502 or § 3-505 and says nothing about a violation of § 3-503, which was the basis of Marshall's complaint. In contrast, the two courts noted the language in §§ 3-507 and 3-507.1, which allow remedial action by the Commissioner upon a violation of "this subtitle," not just §§ 3-502 or 3-505. In their view, to regard § 3-507.2 as applying to a violation of § 3-503 would effectively expand the statute beyond its clear wording. The Court of Special Appeals added the thought that § 3-503 was not violated in any event because the error in calculating the proper exemption did not constitute a failure to pay wages "when, as here, Safeway did not benefit from its mistake and the Maryland Rules furnish a procedure to promptly remedy such an error." *Marshall v. Safeway, supra*, 210 Md. App. at 569, 63 A.3d at 686.

We have a different view, based on both the language of § 3-507.2 and the legislative history of the subtitle.

We examined some of the legislative history of subtitle 5 and its relationship to subtitle 4, which is the Maryland equivalent of FLSA, in *Friolo v. Frankel*, 373 Md. 501, 819 A.2d 354 (2003). What is now title 4 – the Wage and Hour Law – was first enacted in 1965. *See* 1965 Md. Laws, ch. 697. In addition to giving the Commissioner of Labor and Industry broad investigative powers to assure compliance, it provided three specific enforcement mechanisms – one criminal and two civil. Any employer who paid less than the required minimum wage was subject to fine of $1,000. In addition, as civil remedies,

employees paid less than the required minimum could sue the employer directly or they could assign their claim to the Commissioner, who could bring a civil action on their behalf. Those remedies are still in that law. *See* LE §§ 3-428 (criminal penalty) and 3-427 (civil action by employee or assignment of claim to Commissioner).

What is now subtitle 5 – the Wage Payment Law – was enacted a year later, in 1966. As now, it required that employees (other than executive, administrative, or professional employees) be paid at least once every two weeks or twice a month, that upon termination they be paid for all work previously performed, and that employers not withhold any part of wages except for taxes or in accordance with law without written authorization from the employee. *See* 1966 Md. Laws, ch. 686.

Unlike the Wage and Hour Law, the 1966 enactment did not provide for a direct private action against an employer for a violation. Aside from a criminal penalty of up to $350, the only remedy was that, upon a complaint, the Commissioner could bring a civil action on behalf of the employee to enforce compliance and collect "any moneys unlawfully withheld from such employee which shall be paid to the employee entitled thereto." Although there was some tinkering over the years with the amount of the penalties, until 1993 the only civil action against the employer under the statute remained an action by the Commissioner.[6]

---

[6] The employee did have the right to a common law action for breach of contract, but that was not a statutory action.

As we explained in *Friolo*, the addition of a private right of action in 1993 followed from the elimination two years earlier of the unit in the Commissioner's office that was responsible for prosecuting civil actions on behalf of employees. With that resource gone, concern was expressed that employees often had no other resource to assist them in pursuing claims for unpaid wages. The enactment of what is now § 3-507.2, allowing a direct action by employees, with the ability to recover up to treble damages and attorneys' fees if there was no bona fide dispute, was the legislative substitute. Our discussion in *Friolo* centered on the provision for up to treble damages and attorneys' fees if the wage was not withheld pursuant to a bona fide dispute. Here, the question is how the various sections were intended more broadly to fit together.

We have long and consistently subscribed to the view that, when a statute is part of a larger statutory scheme, "it is axiomatic that the language of a provision is not interpreted in isolation; rather, we analyze the statutory scheme as a whole considering the 'purpose, aim, or policy of the enacting body' [citations omitted] and 'attempt to harmonize provisions dealing with the same subject so that each may be given effect.'" *Fire Fighters v. Cumberland*, 407 Md. 1, 9, 962 A.2d 374, 379 (2008) (and cases cited there). Application of those principles convinces us that the two lower courts took much too narrow a view regarding the proper interpretation of LE § 3-507.2, one that is not at all consistent with the legislative intent.

We start with the very definition of "wage" in LE § 3-501(c)(1) – *all* compensation

- 19 -

that is due *to an employee* for employment." (Emphasis added). That is what §§ 3-502 and 3-505 relate to – that is what must be paid at or by the specified times. It is true, as we noted in *Friolo* and as focused on by the lower courts, that those sections are principally timing requirements, but what the timing relates to is what must be paid – all compensation that is due. When an employer makes an unauthorized deduction under § 3-503, it is not paying all the compensation that is due to the employee. It is paying some part of that compensation (or perhaps all of it), unlawfully, to someone else. A violation of § 3-503 necessarily constitutes a violation also of § 3-502 or § 3-505.

That conclusion is compelled by a number of factors. Under the lower courts' reading, an employer would be immune from an employee's suit under § 3-507.2 if it unlawfully withholds all but one cent of the wages due, which cannot have been the legislative intent. Moreover, as pointed out in the Commissioner's *amicus* brief, the lower court's construction would create an internal inconsistency in § 3-507.2. If § 3-507.2(a) is read literally to create a private cause of action only if the employer fails to make any payment at the times required by §§ 3-502 and 3-505, it would be inconsistent with § 3-507.2(b), which allows an award of three times the wage and attorneys' fees if the employer withholds wages "in violation of this subtitle" – not just § 3-502 or § 3-505 – other than pursuant to a bona fide dispute. How can an award of three times the wage wrongfully withheld be possible if the employee cannot sue for the wrongfully withheld wage itself?

The legislative history of § 3-507.2, found in the Department of Legislative Services

bill file on House Bill 1006 (1993 Session), which enacted what is now § 3-507.2, supports the conclusion we reach. The synopsis of the Bill prepared by the Department noted that it allows "a private cause of action by an employee against an employer who fails to pay wages *as required under the Maryland Wage Payment and Collection Law*" – not just if the payment is late under § 3-502 or § 3-505 (Emphasis added). The fiscal notes prepared by the Department of Fiscal Services contain similar broad language – "[T]his bill permits an employee to bring a private cause of action against an employer to recover unpaid wages."

*See* also the written testimony on HB 1006 (1) by the Division of Labor and Industry: "House Bill 1006 would allow the employee to bring action for violation of the Maryland Wage Payment and Collection Law . . . ," (2) by the Chair of the Maryland State Bar Association Section Council on Delivery of Legal Services, noting that HB 1006 "permit[s] a private cause of action for violations of the Wage Payment and Collection Statute," and (3) by the Executive Director of the Maryland Volunteer Lawyers Service, observing that HB 1006 was aimed at "[e]mployers who take advantage of employees by not paying full wages" by allowing an employee to "bring suit against an employer for refusing to pay wages legally due."

All of this demonstrates that the purpose of § 3-507.2 was to provide a meaningful remedy to the harm flowing from the refusal of employers to pay wages lawfully due – to allow the employee to do what the Commissioner previously was able to do. The particular references to §§ 3-502 and 3-505 are understandable because those sections determine *when*

the wages are due, but it would be wholly inconsistent not only with the requirement of harmonizing the various parts of the law, but also with the clear evidence of actual legislative intent to construe them as limitations on the employee's cause of action.

## Denial of Motion to Certify Class

No question is raised here as to whether, as a general proposition, an action under LE § 3-507.2 may be maintained as a class action. The only issue is whether the Circuit Court abused its discretion in denying the motion to certify the class under the circumstances of this case, and, as to that, we agree with the Court of Special Appeals that there was no abuse of discretion.

As we have observed, the Circuit Court considered all of the relevant factors set forth in Md. Rule 2-231. It was concerned first about the lateness of the motion – 15 months after the suit was filed, more than six months after the pretrial conference, and only three weeks before the scheduled trial. To have allowed the motion at that time would necessarily have delayed trial for months, especially if the creditors of the 500+ class members would need to be joined.

Marshall's response to that concern was that the delay in filing the motion for certification was due entirely to Safeway's refusal to provide discovery regarding the other members of the putative class, and that bears examination. The discovery in question was requested when the initial complaint was filed, in August 2010. Though presumably aware

of the requirement in Rule 2-231(c) that a motion for certification be filed "as soon as practicable after commencement of the action," it was not until March 2011 – seven months later – that Marshall moved for an order to compel the discovery or for sanctions. In that motion, she observed that the discovery regarding other possible members of the class would have shown the extent of harm caused "by defendant's admitted practices," the numerosity of the class, the typicality of the plaintiff's claims, and the suitability of class certification. Safeway responded that, by that time, the court already had dismissed Marshall's monetary claims, no motion to certify the class had been filed, and, with respect to the remaining claims for declaratory and injunctive relief, the case was moot. At the hearing on the motion to certify, Marshall added that discovery was necessary to determine whether Safeway had, in fact, changed its corporate policy and whether any such change would be permanent.

In *Frazier v. Castle Ford, supra,* 430 Md. 144, 161, 59 A.3d 1016, 1026, we held that a tender of individual relief to the putative class representative does not moot a class action if the individual plaintiff has not had a reasonable opportunity to seek class certification, "including any necessary discovery." [7]

Though certainly brief, that statement is consistent with jurisprudence under the

---

[7] Md. Rule 2-231(g) provides that "[f]or purposes of discovery, only representative parties shall be treated as parties" but that "[o]n motion, the court may allow discovery by or against any other member of the class." We note that Rule only to point out its non-application here. For one thing, there is no "other member of the class" until the class is certified. Nor was any discovery requested here by or against any other member of the class – only against Safeway.

analogous Fed. Rule Civ. Proc. 23 that "discovery in aid of the certification decision often includes information required to identify the nature of the issues that actually will be presented at trial" and "[i]n this sense, it is appropriate to conduct controlled discovery into the "merits," limited to those aspects relevant to making the certification decision on an informed basis." *See* Advisory Committee Notes to FRCP 23 (2003 Amendments, Subdivision (c)(1)). Discovery is not generally *required* for that purpose, however, but remains in the discretion of the trial court. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009):

> "District Courts have broad discretion to control the class certification process, and '[w]hether or not discovery will be permitted . . . lies within the sound discretion of the trial court [citations omitted]. Although a party seeking class certification is not always entitled to discovery on the class certification issue, we have stated that '[t]he propriety of a class action cannot be determined in some cases without discovery [citation omitted]."

*See* also *Chateau de Ville Productions, Inc. V. Tams-Witmark Music*, 586 F.2d 962 (2nd Cir. 1978); *In re Initial Public Offerings Securities Litigation*, 471 F.3d 24, 41 (2nd Cir. 2006); *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 318-19 (3rd Cir. 2008); *Montelongo v. Meese*, 803 F.2d 1341, 1351 (5th Cir. 1986); *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008).

This Court also has recognized that both the decision to certify a class (assuming the court has applied the proper standards) and decisions relating to discovery, including the imposition of sanctions, are largely discretionary ones for the trial court. *See Frazier, supra*,

430 Md. at 155, 59 A.3d at 1022-23 (decision to certify) and *Rodriguez v. Clarke*, 400 Md. 39, 56-57, 926 A.2d 736, 746 (2007) (decision as to sanctions).

The Circuit Court regarded the information sought with respect to putative class members as relevant principally to the issue of numerosity, which it found had been established (and largely conceded by Safeway) without the discovery. As noted, Marshall contended that the discovery was needed to establish other criteria for class certification – commonality, predominance, superiority, and whether Safeway had actually changed its practice. We find no merit in that position.

As to whether Safeway actually made any permanent change to its policy, the court had before it not only Ms. Brossman's affidavit, which Marshall could have tested by deposing her or by calling her as an adverse witness, but also company documents reflecting the change. Apart from that, given our holding in *Anderson v. Anderson, supra*, 285 Md. 515, 525, 404 A.2d 275, 280, that any State law that provides less of an exemption than required under the Federal statute is unlawful, confirmed in this case, Safeway would not be permitted to revert to its earlier policy and would have no incentive to do so.

With respect to the other claims by Marshall, the real crux of the Circuit Court's decision, other than untimeliness of the motion, was that the procedure set forth in Md. Rule 3-646 was a far superior method for challenging the amount of exemption (and with it the amount withheld pursuant to the garnishment writ) than a class action. That determination took into account and subsumed subsidiary questions of commonality, typicality, and

predominance.

The only truly common issues in the class action suit were whether Safeway had used an improper standard for determining exemptions and would continue to use such a standard. Safeway conceded that it had used the $145 per week standard except in the four Eastern Shore counties because that is what the Maryland statute clearly required, but that it was no longer doing so (and cannot lawfully do so). All other issues regarding the proper amounts withheld pursuant to the garnishment orders are dependent on the particular facts of each case – what the Federal minimum wage was at the time of the individual garnishments, what the disposable wage of each employee was at the time, whether the garnishments were for taxes or child or spousal support as to which different standards applied, whether there were any other defenses to the judgment or the garnishment. On top of that was the undisputed fact that, in Rule 3-646 cases, the garnishing creditor is a party – a party with a much greater interest in the matter than the employer. Marshall did not add the creditors as parties and, as a practical matter, doing so may have made the class action suit, allegedly involving over 500 garnishments, wholly unworkable.

In short, we find no abuse of discretion in the denial of class certification. In light of that denial, there was no longer any justiciable controversy between Marshall and Safeway, and thus there was no error by the court entering judgment for Safeway.

JUDGMENT OF COURT OF
SPECIAL APPEALS AFFIRMED,
WITH COSTS.

Circuit Court for Prince George's County
Case No: CAL10-23978
Argued: February 10, 2014

IN THE COURT OF APPEALS

OF MARYLAND

No. 56

September Term, 2013

_____

BONITA H. MARSHALL

v.

SAFEWAY, INC.

_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Wilner, Alan M. (Retired,
        Specially Assigned),

JJ.

_____

Concurring and Dissenting Opinion
by Adkins, J.

_____

Filed: March 26, 2014

Respectfully, I disagree with the Majority's holding that Ms. Marshall had a private cause of action under Md. Code (1993, 2008 Repl. Vol., 2013 Cum. Supp.), § 3-507.2 of the Labor and Employment Article ("LE"). I agree with the Circuit Court and the Court of Special Appeals that under a plain language interpretation, an employee can only bring a § 3-507.2 action, with its attendant treble damages and attorney's fees, if the employer "fails to pay an employee in accordance with § 3-502 or § 3-505." LE § 3-507.2. Safeway violated neither LE § 3-502 nor LE § 3-505. Rather, in response to a wage garnishment, it made a deduction from Ms. Marshall's wages that failed to comply with LE § 3-503. If the Legislature had intended to allow an employee to bring a § 3-507.2 action for the employer's failure to comply with LE § 3-503, it certainly knew how to say so. I agree with all other aspects of the Majority opinion, and like the Majority, I would affirm the judgment of the Court of Special Appeals.

Circuit Court for Prince George's County
CAL10-23978
Argued: February 10, 2014

IN THE COURT OF APPEALS
OF MARYLAND

No. 56

September Term, 2013

_____

BONITA H. MARSHALL

v.

SAFEWAY, INC.

_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Wilner, Alan M. (Retired,
    specially assigned),

JJ.

_____

Concurring Opinion by McDonald, J.

_____

Filed: March 26, 2014

I join the Court's very clear and well reasoned opinion. I write separately just to note that, while the Circuit Court properly exercised its discretion in this case to deny certification of a class for the reasons identified in the Court's opinion, other claims under the Wage Payment and Collection Law may be amenable to prosecution as class actions. These are often cases in which multiple individual employees may each have a claim – claims that are small compared to many that we see, but that may be very significant to the individual employees – against the same defendant for very similar reasons. Indeed, the closely related wage and hour laws themselves contemplate the consolidation of similar individual claims against one employer in a single action. *See* Maryland Code, Labor & Employment Article, §3-427(b)(3); 29 U.S.C. §216(b).